IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-cv-00095-BO-RN

| | |
|---|---|
| SVB FINANCIAL GROUP and FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK, )<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY and BERKLEY REGIONAL INSURANCE COMPANY,<br><br>Defendants. | ESI PROTOCOL GOVERNING PRODUCTION OF DOCUMENTS |

## ESI PROTOCOL GOVERNING PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 26 and the Local Rules of this District Court, it is ORDERED that the Parties and their respective counsel shall be governed by the terms and conditions concerning the production of electronically stored information and documents ("ESI") as follows:

1. This ESI Protocol Governing Production of Documents (the "Protocol") supplements the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37, and governs the production of ESI in this Action in response to any discovery request served under the Federal Rules of Civil Procedure, and, insofar as it relates to ESI, this Protocol applies to subpoenas issued pursuant to Fed. R. Civ. P. 45 in all instances where the provisions of Fed. R. Civ. P. 45 are the same as, or substantially similar to, Fed. R. Civ. P. 16, 26, 33, 34, or 37. This Protocol shall be interpreted in a manner consistent with the Parties' rights and obligations under any Federal, Local or Court rule and any other order of this Court. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

Compliance with this Protocol shall satisfy and discharge the Parties' ESI-related obligations to respond to requests for production of documents that have been or will be propounded in this action, unless otherwise agreed to by the Parties or ordered by the Court. Each of the Parties reserves the right to seek exceptions, amendments or modifications to this Protocol by mutual agreement and/or from the Court.

2. In this Protocol, the following terms have the following meanings:

   a. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; and (iii) information created by the processing of a file into the format used by a reviewable database (e.g., BegBates, BegAttach). Metadata is a subset of ESI.

   b. "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified. Native Files are a subset of ESI.

   c. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the Discovery Parties or order of the Court, a Static Image should be provided in single-page Tagged Image File Format (TIFF, or .TIF files), except when color images are required to read or understand the file/document's content. Color images shall

be produced as single-page JPEG files.

    d. "Load File(s)" means the file necessary to load data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

    e. "Party" or "Parties" include SVB Financial Group ("SVBFG"), the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank ("FDIC-R"), Federal Insurance Company ("Chubb"), and Berkley Regional Insurance Company ("BRIC").

    f. "Discovery Party" or "Discovery Parties" include the Parties to this litigation as well as any non-party person or entity that is served with a subpoena pursuant to Fed. R. Civ. P. 45 and opts-in to the Protocol.

    g. "Producing Party" shall mean a Discovery Party that produces ESI.

    h. "Receiving Party" shall mean a Discovery Party that receives ESI.

3. The provisions of this ESI Protocol and the Attachment "A" shall govern the production of ESI for all the Discovery Parties.

4. The Parties may agree in writing (including by email) to modify, delete, or add to any of the provisions of this Protocol at any time, without the necessity of Court intervention.

5. Nothing in this Protocol requires the Discovery Parties to produce again any information that was produced to the other prior to the execution of this Protocol.

## A. The Producing Parties' ESI

6. If any Producing Party is in possession of certain ESI that is responsive to discovery requests propounded in this action, and it would not be unduly burdensome or otherwise

3

objectionable to produce such ESI, including without limitation, e-mail and documents of various types, subject to the terms of this Protocol and the Protective Order, then the Producing Party shall produce non-privileged ESI to the Defendants that is responsive to any request for production of documents.

7. ESI that is not completely text-searchable shall be referred to as "Non-Searchable ESI" and disclosed as part of the meet and confer process described in paragraph 9. Examples of Non-Searchable ESI may include, but are not limited to, hard copies, mobile data, and un-transcribed audio or video. If a Receiving Party determines that it would like text-based searches of any Non-Searchable ESI, the Discovery Parties will discuss and attempt to reach an agreement regarding the processing of the data required to make such data text-searchable and the costs involved in doing so. If the Discovery Parties are unable to reach an agreement, any Discovery Party will have the right to address issues relating to the Non-Searchable ESI with the Court. Any issues relating to the Non-Searchable ESI will not be subject to this Protocol, except with respect to the procedure addressed in this paragraph, but will instead be subject to the applicable rules and laws governing the production of ESI, including but not limited to Fed. R. Civ. P. 26(b)(2)(B) and 34.

8. The Discovery Parties agree search terms will assist in identifying documents and categorical ESI, such as discrete repositories, which are responsive to the Discovery Parties' requests for production.

9. The Discovery Parties shall meet and confer as necessary in a collaborative effort to develop a proposed set of search terms that the Discovery Parties will use in a search of their respective ESI. Each Producing Party shall apply the initial search terms to its ESI and shall identify for each source of ESI: (i) the number of unique documents without families (*i.e.*,

4

attachments) triggered by each identified search term in the set of proposed search terms; and (ii) the number of unique documents with families triggered by each identified search term in the set of proposed search terms. The Discovery Parties shall engage in an iterative process in good faith to establish final agreed-upon search terms. During this iterative process to establish final agreed-upon search terms, the Discovery Parties will collectively modify the search terms based upon the approximate volume of data and "hit" counts from the previous iteration of searching. The Discovery Parties may request a reasonable number of iterations to establish the final set of search terms. Each Producing Party reserves the right to contest the search terms and requests of the Discovery Party that propounded the discovery requests, including objections based upon burdensomeness or cost. The Discovery Parties will confer in good faith to resolve any disagreement regarding any proposed search terms or any other part of the search term procedure. If the Discovery Parties are unable to agree upon a final set of search terms or any other part of the search term procedure, any Discovery Party may within a reasonable time raise the issue with the Court.

10. After the Discovery Parties have agreed upon search terms, or established search terms with the assistance of the Court, each Producing Party shall apply the search terms to its ESI. Each Producing Party may review the files resulting from the search terms for privilege, relevance and responsiveness. Further, files relating to the operation of the Bank also may be reviewed for material protected by the Bank Secrecy Act or other laws, regulations, or protections against the disclosure of particular information. Each Producing Party will produce the responsive, non-privileged documents resulting from this process.

11. A Producing Party need not re-produce responsive documents that have already been produced, with the caveat that the Receiving Parties reserve the right to request re-production

of certain documents where circumstances may reasonably warrant, and the Producing Parties reserve the right to object to any such request.

**B. <u>General</u>**

12. Each Discovery Party is responsible for taking reasonable and proportional steps to preserve potentially relevant ESI within its custody or control.

13. To the extent reasonably possible, the Discovery Parties will collect and preserve ESI in a manner that preserves Metadata. As provided for herein, each Discovery Party should reasonably endeavor to remove duplicates from all ESI productions in a consistent and defensible manner that does not break up document families (such as emails and attachments). However, the Discovery Parties should preserve any duplicate ESI that is not produced according to applicable retention and destruction policies.

14. The Parties will discuss in good faith any preservation issues that arise during the course of discovery.

15. When searching for, reviewing, and/or producing responsive ESI, each Discovery Party may apply the following reasonable cost-saving measures: clustering or concept searching, de-duplication and near de-duplication (subject to the specifications in Attachment A), e-mail thread suppression, file-type culling, and/or technology-assisted review or computer-assisted review ("Cost-Saving Measures"). Upon inquiry, a Producing Party must disclose the Cost-Savings Measure(s) it used and meet and confer regarding their implementation.

16. Notwithstanding the provisions of this Protocol, each Party shall produce any and all ESI it intends to rely upon in support of any claim or defense with respect to this case.

17. If, after reviewing a Producing Party's production, a Receiving Party believes additional responsive documents exist but have not been produced, the Discovery Parties shall

6

Case 5:23-cv-00095-BO-RN   Document 54   Filed 03/08/24   Page 6 of 12

meet and confer in good faith and attempt to reach an agreement regarding any reasonable additional steps to be taken to locate and produce such documents and information, including but not limited to, additional means to identify documents, additional custodians to search, and the costs involved in taking such steps and any subsequent production. If the Discovery Parties are unable to reach an agreement, they may address this issue with the Court on an expedited basis.

18. Nothing in this Protocol shall waive or otherwise prejudice each Discovery Party's rights to object to any other Discovery Party's requested search terms on grounds provided by the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or other controlling law. As such, the Parties reserve the right to contest and object to opposing party's requested search terms based upon burdensomeness, cost, any applicable privilege, or any other applicable protection from disclosure.

SO ORDERED this 5 day of March, 2024.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

## Attachment A: Electronically Stored Information (ESI) and Images Specifications

### 1. Production Format of Native ESI

All ESI will be produced as (a) Native Files with Load Files (DAT/OPT) that can be loaded into a document review platform such as Relativity®, Clearwell®, etc., or (b) in imaged format (as discussed in section 2 below) with such Load Files. The Load Files will use the format found at subsections 2(B)-2(E).

The following categories of ESI must be produced natively:

**A. Spreadsheets and Presentation Files (*e.g.*, Excel (.xls), .csv, PowerPoint (.ppt))**

**B. Structured Data**: The Discovery Parties will meet and confer regarding the format in which ESI from structured databases is to be produced, whether in report format, or in .csv or .xls format.

The categories of ESI set forth below in 1.C and 1.D must be produced as an image, subject to a request by the Receiving Party for natives. Upon such a good-faith request by the Receiving Party to the Producing Party, a native copy of the document shall be provided. To the extent any disputes arise regarding the production of native documents, the Receiving Party and the Producing Party shall meet and confer in good faith and attempt to reach an agreement regarding the format for the production.

**C. E-mails and E-mail Repositories (*e.g.*, Outlook .MSG/.PST, Lotus NSF, etc.)**

  i. E-mail will not be produced in native unless the entire e-mail family—the parent e-mail and all attachments—is responsive, relevant and not privileged.

  ii. Upon prior agreement with the Receiving Party, a Producing Party may produce Outlook .PST and Lotus Notes .NSF e-mail files in native (i.e., container) format. A separate production folder will be provided for each Custodian.

**D. All Other ESI (*e.g.*, Word, PDF, Apple-type files)**: All other types of ESI shall be produced with an accompanying Load File complete with full text extracts and the fields of metadata listed in Attachment B, to the extent the metadata is available.

**E. Other Potentially Relevant Sources of ESI**: The Discovery Parties will confer if they anticipate producing any potentially responsive ESI from the data sources below, and any other file formats that may require special handling, processing, or delivery methods.

  i. instant Messaging, Voicemail Data, Audio Data, Video Data, etc. (e.g., GoTo Meeting®, WebEx®);

  ii. Social Media (e.g., Twitter, Facebook, Google+, LinkedIn).

8

2. **Production Format of Images**

   Responsive images shall be produced in the format outlined below. Items to be produced in imaged format (*e.g.*, TIFF, JPEG) may include, among others, scanned hard copies and e-mail families in which one or more items are privileged. In the case of e-mail, privileged items will be either redacted in part, or replaced by a slipsheet if withheld in its entirety.

   A. **Image File Format**: All images, paper documents scanned to images, or image-rendered ESI, will be produced as either black and white 300 dpi single-page TIFF files, CCITT Group IV (2D Compression)or, upon request, in color, where color images are required to read or understand the file/document's content as color JPEG images under Section [2(c)] of the ESI Protocol. Images will be uniquely and sequentially Bates-numbered and unless otherwise specified, Bates numbers will be branded into each and every image.

      i. All image file names shall include the unique Bates number burned into the image. All TIFF image files will be stored with the ".tif" extension.

      ii. All scanned paper documents must be OCR'd and the resulting document-level text files produced, with the link to the text file for a given record within the accompanying DAT Load File (see subsection 2(D) below).

   B. **Concordance® Image Cross Reference file (*i.e.*, .OPT)**: Images must be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross-Reference file will also contain the image file path for each unique identification number. Image Cross Reference Sample Format:

      DOC000001,,\IMAGES\DOC000001.TIF,Y,,,2
      DOC000002,,\IMAGES\DOC000002.TIF,,,,

   C. **Concordance® Load File (*i.e.*, DAT)**: Images will also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment.

      i. Text delimited load files are defined using the standard Concordance delimiters. For example:

         | *Field Separator* | *¶ or Code 020* |
         | *Text Qualifier* | *þ or Code 254* |

      ii. This load file will also contain links to applicable native files, such as Microsoft Excel or PowerPoint files.

      iii. There will be one line for every item in a production.

   D. **Extracted/OCR Text**: Text will be provided for each document as a separate single text file. The file name will match the BEGBATES for that specific record and be

9

accompanied by the .txt extension. A link to the text file for every record will be provided in the TEXTLINK field in the DAT file.

### E. Bates Numbering Convention:

   i. All images must be assigned unique identification numbers prior to production. Each unique identification number will be uniform, include leading zeros in the number, and be unique for each produced page. Numbers will be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document.

   ii. Native files will be named to match the BEGBATES field of the corresponding image or slipsheet.

### F. Document Unitization: All imaged hard copy materials will reflect accurate document unitization, including all attachments.

   i. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle—*i.e.*, physical boundary (*e.g.*, staples, paperclips, rubber bands, folders, or tabs in a binder).

3. **Directory and Folder Structure:** The directory structure for productions will be:

   \Volume\**Data**
   \Volume\**Images** < For supporting images (can include subfolders as needed, will not include more than 5,000 files per folder)
   \Volume\**Natives** <Native Files location (can include subfolders as needed, will not include more than 5,000 files per folder)
   \Volume\**Text** <Extracted Text files location (can include subfolders as needed, and up to 5,000 files per folder)

4. **Other Specifications**

   **A. De-Duplication:** To avoid the production of more than one copy of a particular unique item, Producing Parties will use industry standard MD5 (or SHA-1) hash values within (1) all e-mails identified for production, and (2) all loose electronic files identified for production. The Producing Party will not de-duplicate attachments to e-mails against loose electronic files.

   **B. Media Formats for Delivery of Production Data:** Electronic documents and data will be delivered via secure file sharing and transfer service (e.g., Secure FTP, ShareFile) unless the size of the data requires external media. Media will be labeled with the case caption or case name, date of the production, complete Bates range, and name of the Producing Party.

10

## Attachment B: Metadata/Database Fields

A "✓" denotes that the indicated field should be present in the load file produced. Metadata should be included to the extent available and left empty if unavailable.

| Field name | Field Description | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|
| NATIVEID / DOCID | Unique document Bates # or populate with the same value as BEGBATES (DOCID = BEGBATES). | ✓ | ✓ | ✓ |
| BOX # | Scanned box # record is from. | ✓ | | |
| BEGBATES | Start Bates (including prefix) - No spaces. | ✓ | ✓ | ✓ |
| ENDBATES | End Bates (including prefix) - No spaces. | ✓ | ✓ | ✓ |
| GROUP IDENTIFIER | Contains the Group Identifier for the family, in order to group files with their attachments. | ✓ | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment. | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment. | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | | ✓ | ✓ |
| FROM | Sender of an Email | | ✓ | |
| TO | Recipient - format: Last name, First name. | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name. | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | | ✓ | ✓ |
| TITLE | Document Title. | | ✓ | ✓ |
| SUBJECT | Subject line | | ✓ | ✓ |
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | | ✓ | ✓ |
| SENTDATE | Date Sent. | | ✓ | |
| SENTTIME | Time Sent (Use GMT time zone). | | ✓ | |
| CREATEDATE | Date Created. | | ✓ | ✓ |
| CREATEDTIME | Time Created (Use GMT time zone). | | ✓ | ✓ |
| MODDATE | Date Last Modified. | | ✓ | ✓ |
| FILEPATH / COMPPATH | The location in the file system from which the file was collected | | ✓ | ✓ |
| FILENAME | File name - name of file as it appeared when it was collected. | | ✓ | ✓ |

| Field name | Field Description | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|
| FILE EXTENSION | .xls, .pdf, .wpd, etc. | | ✓ | ✓ |
| DOCTYPE | Email, attachment, edoc, etc. | | ✓ | ✓ |
| RECTYPE / APPLICATION | Application used to create native file (*e.g.*, Excel, Outlook, Word). | | ✓ | ✓ |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments). | | ✓ | ✓ |
| ALL CUSTODIANS | Name(s) of custodian(s) with exact copy of file before de-duplication | | ✓ | ✓ |
| CONFIDENTIALITY | Confidentiality designation | | | |
| REDACTED | Y, if images are redacted | | | |
| TEXTLINK | file path to load the text file of the extracted text or the OCR text for each record. | ✓ | ✓ | ✓ |
| NATIVELINK | file path to the load the native file, if applicable | | ✓ | ✓ |

+ Any other fields considered relevant by the Producing Party.