IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00095-BO-RN

**SVB Financial Group & FDIC as Receiver for Silicon Valley Bank**,

    Plaintiffs,

v.

**Federal Insurance Company & Berkley Regional Insurance Company**,

    Defendants.

**Order**

    Before the court are two motions seeking to compel supplemental discovery responses. The first motion is brought by Plaintiff Federal Deposit Insurance Corporation, the Receiver for Silicon Valley Bank ("FDIC-R"). It seeks to compel Defendant Federal Insurance Company to produce more documents and information related to the drafting and application of the insurance policies at issue here. And in the second motion, Plaintiff SVB Financial Group wants the court to require Defendant Berkley Regional Insurance Company to produce documents related to its interpretation of policy terms similar to those in Federal's policy.

    Having considered the parties' arguments, the court finds Federal has failed to establish that FDIC-R is seeking irrelevant information or that its discovery is not proportional to the needs of the case. On the other hand, Berkley has convinced the court that since it is an excess insurer and any coverage flows from the applicability and exhaustion of the Federal policy, SVB's request about how it handled similar claims are not relevant to the claims and defenses in this case. So FDIC-R's motion will be granted, but SVB's motion will be denied.

I.  **Background**

In December 2020, Elliott Smerling contacted SVB about opening a $150,000,000 line of credit. Compl. ¶¶ 1, 2, D.E. 1–3. He told the bank that he was the founder of an entity called the JES Fund as well as the fund's general partner, JES Global Capital GP III, LLC. *Id.* ¶ 2. Over the following weeks, Smerling convinced SVB that the JES Fund "was a legitimate private equity fund that had $500 million in capital commitments from prominent limited partners[.]" *Id.* ¶ 3. He "provided original documents, including signed subscription agreements (the 'Subscription Agreements') that were purportedly executed by each of the Limited Partners in the JES Fund." *Id.* "The Subscription Agreements incorporate by reference the terms of the Limited Partnership Agreement ('LP Agreement') for the JES Fund; they bind each Limited Partner to the terms of the LP Agreement; and they make each Limited Partner a party to the LP Agreement." *Id.* ¶ 31.

After conducting its due diligence, SVB entered into a loan agreement with the JES Fund and JES General Partner that provided a $150 million line of credit. *Id.* ¶ 4. Smerling and the JES Fund immediately requested $95 million from that line of credit, which SVB provided. *Id.*

After closing, SVB requested additional information from the JES Entities, but they would not provide it. *Id.* ¶ 5. Thereafter, SVB learned that Smerling had provided it with forged documents. *Id.* ¶ 6. The federal government later arrested Smerling, who pleaded guilty to committing fraud against SVB. *Id.* ¶ 8. During those proceedings, Smerling admitted that he forged signatures of purported investors and created fake documents to entice banks to lend him money. *Id.*

While SVB has recouped some of the money it loaned to the JES Entities, its "losses currently stand at approximately $73 million, as well as additional interest, charges, fees and other obligations owing under the Loan Agreement, and additional damages." *Id.* ¶ 9. In an attempt to

2

recover those funds, it turned to Federal and Berkely, both of whom had written insurance policies for SVB. *Id.* ¶ 10.

Federal's policy contains an Extended Forgery provision. *Id.* That provision provides coverage for a "[l]oss resulting directly from" SVB "having, in good faith, . . . extended credit . . . in reliance on any original" document described in the endorsement that, among other things, "bears a Forgery" or "is fraudulently materially altered[.]" *Id.* (quoting Am. Extended Forgery Endorsement, D.E. 1–3 at 42). Among the documents described in the endorsement are a "corporate, partnership or personal Guarantee" and a "Security Agreement." *Id.*

The Federal Policy defines several of these terms. For example, the policy defines a Guarantee as "a written undertaking obligating the signer to pay the debt of another to [SVB] or its assignee . . . if the debt is not paid in accordance with its terms." *Id.* ¶ 23 (quoting Conditions and Limitations § 1(o), D.E. 1–3 at 27). And it defines a Security Agreement as "an agreement which creates an interest in personal property or fixtures and which secures payment or performance of an obligation." *Id.* ¶ 24 (quoting Conditions and Limitations § 1(x), D.E. 1–3 at 28). Finally, under the policy Forgery "means the signing of the name of another natural person with the intent to deceive[.]" *Id.* ¶ 24 (quoting Conditions and Limitations § 1(n), D.E. 1–3 at 27). The policy does not define the term Original. *Id.* ¶ 25.

Berkley's policy is an excess policy, providing an additional $15 million in coverage. *Id.* ¶ 26. It provides coverage for losses that are covered under Federal's policy but exceed the policy value. *Id.*

SVB believes that both policies provide coverage for its Smerling-related losses. *Id.* ¶¶ 41, 44.

3

But the insurers disagree. Federal maintains "that the LP Agreement and the Subscription Agreements do not constitute 'Guarantees' or 'Security Agreements' within the meaning of" its policy. *Id.* ¶ 47. They argue that the documents do not qualify as Guarantees "because they are not an undertaking obligating [the] signor to pay the debt to SVB." Letter from Kenneth M. West to Chester Te at 5 (Mar. 11, 2022), D.E. 73–2. And they do not meet the policy's definition of a Security Guarantee "because they do not create an interest in personal property and secure payment of an obligation." *Id.* Federal also contends that there is no coverage because SVB did not "have actual physical possession of an original of any qualifying document[.]" Letter from West to Te at 4 (Jan. 3, 2022), D.E. 73–2. Berkely denied coverage as well. Compl. ¶ 47.

SVB sued Federal and Berkley for breach of contract in state court due to their failure to provide coverage for its losses. After the case was removed to this court, FDIC-R appeared as a receiver for SVB. Notice of Substitution, D.E. 21.

Both FDIC-R and SVB seek an order compelling Federal to produce more documents in response to their discovery requests. Mots. to Compel, D.E. 64, 66.

The court held a hearing on these motions in November 2024. During the hearing, the court asked about the theory behind the Plaintiffs' breach of contract claims. Plaintiffs contend that resolution of this case may require the court to resolve ambiguity in the policies' terms. Hr. Tr. at 7:9–8:6, D.E. 89. They note that courts have interpreted some of the operative terms differently and that there is a dispute over whether an electronic document can constitute an original document under the policy. *Id.*

**II.     Discussion**

These motions require the court to determine the appropriate scope of discovery in an insurance discovery dispute involving both a primary and excess insurance policy.

Federal opposes many of FDIC-R's requests because it claims extrinsic evidence is irrelevant to the resolution of the Plaintiffs' claims. FDIC-R responds that the documents are necessary to help the court identify and resolve any ambiguities in the policy's language. Although this order does not resolve whether an ambiguity exists the court finds that the disputed discovery is relevant to the claims and defenses here and proportional to the needs of the case. So it will grant FDIC-R's motion.

SVB's motion seeks documents that will reveal how Berkley construed and applied policy terms like those in the Federal policy. Berkley says that this information is irrelevant because, as an excess carrier, its denial was the result of Federal determining that there was no coverage, not an independent determination of whether Federal's policy applied to SVB's losses. The court finds Berkley's argument to be persuasive, so it will deny SVB's motion.

**A.     Standard for Discovery and Motions to Compel**

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). For discovery, the scope of "relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (quoting *Oppenheimer Fund., Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978)).

The Rules also allow a requesting party to move to compel if the responding party's discovery responses are incomplete or inadequate. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection*, 270 F.R.D. at 241. To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

With these requirements in mind, the court first turns to the parties' motions.

B.      **Overview of Interpretation of Insurance Contracts**

Under both California and North Carolina law, courts interpret insurance policies based on their plain and ordinary meaning as understood by a reasonable person in the insured's position. *AIU Ins.* v. *Superior Ct.*, 51 Cal. 3d 807, 814, 799 P.2d 1253, 1259 (1990*)*; *Gaston Cnty. Dyeing Mach. Co.* v. *Northfield Ins.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000). The goal is to enforce the contract as written and give effect to the parties' intent as expressed in the policy's clear language. *Id.*

But when a policy term is ambiguous, courts in both states consider extrinsic evidence to clarify its meaning. A provision is ambiguous if it is reasonably susceptible to two or more interpretations. *E.M.M.I. Inc.* v. *Zurich Am. Ins.*, 32 Cal. 4th 465, 470, 84 P.3d 385, 389 (2004); *Accardi* v. *Hartford Underwriters Ins.*, 373 N.C. 292, 295, 838 S.E.2d 454 (2020). California courts first review the evidence to determine whether ambiguity exists and, if it does, admit the evidence to aid interpretation. *Hervey* v. *Mercury Cas. Co.*, 185 Cal. App. 4th 954, 961, 110 Cal. Rptr. 3d 890, 895 (2010). That said, parol evidence cannot be used to contradict the policy's clear and explicit terms. *See Supervalu, Inc. v. Wexford Underwriting Managers, Inc.*, 175 Cal. App. 4th 64, 75, 96 Cal. Rptr. 3d 316, 325 (2009).

North Carolina courts similarly follow the four-corners rule, examining the plain language of the policy to determine intent. And if the terms are ambiguous, the court may admit extrinsic evidence to clarify their meaning. Whether a contract is ambiguous is a question of law for the court to decide. *Piedmont Bank & Tr. Co.* v. *Stevenson*, 79 N.C. App. 236, 241, 339 S.E.2d 49, 52 (1986). Courts reconcile the terms if possible and admit extrinsic evidence only when the language cannot be reasonably resolved from the policy itself. *Lynn* v. *Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 205 (2010).

With the principles of insurance contract interpretation established, the court next considers which jurisdiction's substantive law applies and how procedural and evidentiary rules are determined here.

C. **Choice of Law**

This case involves a breach of contract claim and thus is governed by state, not federal law. *Sonoco Prods. Co.* v. *Physicians Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir. 2003). But the parties' briefs are not entirely clear on which state's law applies. Their briefs cite both California and North Carolina law, but they make no meaningful attempt to engage in a choice of law analysis.

At the hearing on these motions, the parties told the court that although the choice of law issue may need to be resolved at some point, for purposes of these motions, they agree that there is no meaningful difference between California and North Carolina law. Hr. Tr. at 6:6–20. The court notes, however, that whatever state's substantive law applies to this dispute, federal law controls procedural issues. *See Erie R.R. Co.* v. *Tompkins*, 304 U.S. 64, 78–80 (1938).

7

D.     FDIC-R'S Motion to Compel

FDIC-R's motion focuses on two categories of documents. The first category includes the drafting history of the Extended Forgery provision at issue, as well as Federal's communications with state regulators regarding it. The second category involves documents related to Federal's underwriting and sale of its policy. D.E. 64. It generally asserts that these documents will shed light on the meaning of various policy term at issue here. Federal disagrees, arguing that the requests seek irrelevant information, are duplicative, or not proportional to the needs of the case.

1.     **Drafting Histories**

Several of the disputed discovery requests seek documents and information about the drafting history of the disputed provisions. Federal argues that these discovery requests are inappropriate because it did not draft the disputed portion of the policy's language. Instead, it claims that the language was taken from an "industry standard form" jointly drafted by the Surety & Fidelity Association of America and the American Bankers Association. So, according to Federal, FDIC-R should be seeking discovery from those entities instead. It also argues that the drafting history is irrelevant because the policy's terms are interpreted by their plain meaning regardless of what the drafter intended.

Federal's argument that it is not the drafter of the policy language is unpersuasive. The fact that Federal may have adopted standard industry language to use in the policy does not relieve it of the obligation to produce responsive documents or information. Presumably, Federal engaged in some analysis of the standard industry language before it included that language in the policy. So it is likely that Federal possesses documents or information regarding the decision to include the SFAA language in its policy. And, if it does not, it can comply with its obligations under the Federal Rules by saying so.

Federal also challenges whether FDIC-R is entitled to discovery about the drafting history. Both parties point to cases supporting their position that drafting history is or is not an appropriate discovery topic in an insurance coverage dispute.

The court finds that drafting history could aid it in resolving any ambiguities over the meaning of those terms. *See Ivy Hotel San Diego, LLC* v. *Houston Cas. Co.*, No. 10-CV-2183-L (BGS), 2011 WL 13240367, at *4 (S.D. Cal. Oct. 20, 2011) ("The Court finds considerable California case law permitting an insured to introduce extrinsic evidence of the drafting history of an insurance policy as evidence of the intent of the drafter."); *Montrose Chem. Corp.* v. *Admiral Ins.*, 10 Cal. 4th 645, 670, 913 P.2d 878, 891 (1995) ("Such interpretative materials have been widely cited and relied on in the relevant case law and authorities construing standardized insurance policy language."). Federal's case law to the contrary is unpersuasive. Thus, this portion of FDIC-R's motion is granted.

The court orders that no later than 14 days after entry of this order Federal must supplement its responses to Interrogatory 3 and Requests for Production 16 and 18 to provide the requested documents and information.

### 2. Federal's filings and communications with state regulators

FDIC-R next seeks an order requiring Federal to comply with discovery requests related to its filings and communications with regulators about the disputed policy provisions. Federal says that the request is geographically overbroad and should be limited to filings and communications with regulators in California.

Federal has not met its burden to show that the discovery requests are improper. It has provided the court with no relevant case law supporting its argument that communications with regulators are irrelevant to the claims and defenses in this case. Instead, it cited a case about

9

admissibility of evidence at trial, *Negrete* v. *Allianz Life Ins. of N. Am.*, Nos. CV 05–6838 & CV 05–8909, 2013 WL 6535164 (C.D. Cal. Dec. 9, 2013), and a case about submissions to state regulators in an unrelated investigation into claims settlement practices, *Kelly* v. *Provident Life & Accident Ins.*, No. 04-CV-0807, 2009 WL 10664172 (S.D. Cal. May 29, 2009). Neither case deals with the situation confronting the court here.

And it has not provided the court with any evidence that complying with the requests would be unduly burdensome or unproportional to the needs of the case. *See Mondragon* v. *Scott Farms, Inc.*, 329 F.R.D. 533, 549 n.4 (E.D.N.C. 2019) ("A party claiming that a discovery request is unduly burdensome must present an affidavit or other evidence that specifically describes the process of obtaining the responsive documents or information and the time and expense involved in responding to the request."). Thus FDIC-R is entitled to these documents.

At the hearing, Federal shared that it provided FDIC-R with "an identification of every filing in every state for this form." Hr. Tr. at 23:1–2. And it claims that FDIC-R has the filings are public records that FDIC-R can access online. *Id.* at 6–8. FDIC-R responded that if Federal could "represent that . . . all . . . regulatory filings are publicly available" it would be satisfied. Federal could not make that representation during the hearing, but that it would check after the hearing. *Id.* at 26:18–20. But the docket does not indicate that the parties have reached a resolution of this issue.

So the court orders that within 14 days from the entry of this order Federal must confirm to FDIC-R whether the filings it identified are publicly available and produce any identified filings that are unavailable to the public.

10

### 3. Underwriting Files

The parties also dispute whether Federal's underwriting files are relevant to the claims and defenses in this case. FDIC-R argues that these materials may reveal information about the scope of coverage provided by the policy's terms. Federal says that no claim relates to underwriting and the underwriting process has nothing to do with whether a covered loss occurred here.

Federal cites several cases to support its position, but they are unpersuasive. To begin with, it cites *Naylor* v. *Navigators Insurance Co.*, No. 12-CV-297, 2012 WL 4760912 (S.D. Cal. Oct. 5, 2012). It notes that the *Naylor* court denied a motion to compel because risk assessment, costs of coverage, and premium costs were not at issue and the underwriting file was irrelevant to the disputed coverage issue. Federal Resp. in Opp'n. at 5, D.E. 73.

Next it discussed *Hybrid Promotions* v. *Federal Insurance Co.*, No. 8:18-CV-00891, 2018 WL 6300459 (C.D. Cal. 2018), *aff'd*, 817 F. App'x. 418 (9th Cir. 2020). There the district court denied a motion to compel because the insured did not establish why underwriting materials "are relevant to the Court's interpretation of the Policy's language." *Id.* at *8.

And they also cite to *Navigators Specialty Insurance. Co.* v. *Howard Drywall*, No. 2:09-CV-03115, 2010 WL 11570679 (E.D. Cal. Mar. 18, 2010). In that case the court denied a motion to delay ruling on summary judgment to allow the responding party to conduct additional discovery into underwriting issues. *Id.* at *3. The court found that the moving party had "not demonstrated that the discovery they seek would establish a right to [relief] and preclude awarding summary judgment" to the opposing party. *Id.* at *4.

These cases, to the extent that they are relevant, stand for nothing more than the proposition embodied in Rule 26 that materials need to be relevant to the claims and defenses in this case to

be discoverable. They do not create a bright-line rule that underwriting materials always "have no bearing on whether the insured can prove an insured loss." Federal Resp. in Opp'n. at 2.

Federal argues that the underwriting materials are irrelevant in this case for two reasons. First, FDIC-R is not pursuing claims related to the marketing of the policy or Federal's decision to issue the policy. Federal Resp. in Opp'n. at 6. And second, "underwriting materials have no bearing on the dispositive issue — whether SVB suffered a loss covered under the" policy. *Id*.

In support of its second argument, it contends that underwriting materials have no relation to the interpretation of the policy "because lay testimony about the meaning of a contract term is inadmissible." Federal Resp. in Opp'n. at 6. This argument is flawed for two reasons. To begin with, the Federal Rules explicitly state that information that is otherwise within the scope of discovery, "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

But more importantly, this court has recognized that underwriting materials can help explain the meaning of disputed or ambiguous terms. *Certain Interested Underwriters Subscribing to Pol'y No. B1262PW0017013* v. *Am. Realty Advisors*, No. 5:16-CV-940-FL, 2017 WL 7806610, at *1 (E.D.N.C. Sept. 26, 2017) ("[D]iscovery on the issue of underwriting would help ensure that the court has a complete record on which to make a determination on the issue of ambiguity"); *Accord Silgan Containers* v. *Nat'l Union Fire Ins.*, No. C 09–05971 RS LB, 2010 WL 5387748, at *8 (N.D. Cal. Dec. 21, 2010) (ruling underwriting file was relevant in determining the risks that the defendant expected to cover in the policy and how it interpreted various policy terms). And underwriting files are relevant when ambiguity is at issue to determine "the risks that [a defendant] expected to cover in the policy" and "how it interpreted the various policy terms." *Silgan Containers*, 2010 WL 5387748, at *4–8; *St. Paul Reinsurance Co.* v. *Am. First Ins.*, No. 5:04-CV-

5258 RS, 2005 WL 8177638, at *2 (N.D. Cal. Nov. 16, 2005) (allowing underwriting files specifically pertaining to that coverage scenario).

Federal has failed to show that its underwriting materials are relevant to the claims and defenses in this case. So the court will grant the motion to compel related to the underwriting files.

Federal must supplement its responses to the underwriting-related portions of Interrogatory 2 and Requests for Production 2, 3, and 4 to provide the requested documents and information within 14 days from the entry of this order.

### E. SVB's Motion to Compel

SVB's motion asks the court to require Berkley to produce documents about similar claims under the Extended Forgery Coverage Provision. According to SVB, the requested documents will show how it interpreted and applied this provision in other cases. Because any coverage under its excess policy is based on whether coverage exists under the Federal Policy, Berkley maintains that its handling claims with similar policy language is irrelevant. It also claims that requiring it to produce responsive documents would impose a burden on it that is not proportional to the needs of the case.

The court agrees with Berkely that the disputed discovery requests are not relevant to the claims and defenses in this case. Any coverage under Berkley's excess policy depends on whether there was coverage under the Federal policy and whether that policy's limits have been exhausted. There is no allegation here that Berkley's denial of coverage was based on its independent assessment about whether the Extended Forgery provision provides coverage. As a result, how Berkley handled claims under that provision in the past has no bearing on whether it was

appropriate for Federal to deny coverage for SVB's losses. Thus the court denies SVB's motion to compel.

## III. Conclusion

FDIC-R's Motion to Compel (D.E. 64) is granted as provided above. SVB's Motion to Compel (D.E. 66) is denied. The parties may agree, in writing, to modify the deadlines for supplementation outlined in this order. Each party will bear their own costs.

Dated: January 23, 2025

_____
Robert T. Numbers, II
United States Magistrate Judge

14

Case 5:23-cv-00095-BO-RN    Document 94    Filed 01/24/25    Page 14 of 14