IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00095-BO-RN

**SVB Financial Group & Federal Deposit Insurance Corporation**, as receiver for Silicon Valley Bank,

Plaintiff,

v.

**Federal Insurance Company & Berkley Regional Insurance Company**,

Defendants.

Order

Before the court are two discovery motions by Plaintiff Federal Deposit Insurance Corporation in its capacity as Receiver for Silicon Valley Bank ("FDIC-R"). In one motion, FDIC-R asks the court to compel Defendant Federal Insurance Company ("Federal") to comply with an earlier discovery order related to the drafting history of coverage provisions at issue in this case. In the other motion, FDIC-R seeks an order requiring Federal to produce an executive for a deposition and to turn over various regulatory filings that it claims are not publicly available. Federal opposes FDIC-R's request.

After reviewing the parties' arguments, the court will grant FDIC-R some of the relief it seeks.

I.  **Background**

This case involves an insurance coverage dispute between a financial institution, its insurer, and an excess carrier over the institution's claim to recover for losses it suffered due to fraud by one of its customers. The factual background is discussed in detail in an earlier order. Jan. 23, 2025 Order at 2–4.

Previously, the court resolved discovery motions brought by FDIC-R and its co-plaintiff SVB Financial Group against Federal and its co-defendant Berkley Regional Insurance Company. Jan. 23, 2025 Order, D.E. 94. Two aspects of the order resolving those disputes are relevant to the current motions.

First, the parties disputed whether FDIC-R was entitled to discovery on the drafting history of the disputed coverage provisions. *Id.* at 7–9. The court concluded that it was, and required Federal to supplement its responses to one interrogatory and two requests for production of documents. *Id.*

Federal then produced five documents responsive to Request 16 and one document responsive to Request 18. Saka Decl. ¶ 6, D.E. 100–4. These documents did not involve modifications to the policy language that occurred between 2019 and 2021 despite Federal having modified terms relevant to this case during this period. *Id.* ¶ 7.

Second, the parties disagreed over whether Federal needed to respond to requests about its communications with state insurance regulators. *Id.* at 9–10. As part of the discussion of this issue, Federal told the court that it had identified all its regulatory filings for FDIC-R and that they should be publicly available. *Id.* But since Federal was unsure if all the filings were publicly available, the court ordered it to "confirm . . . whether the filings it identified are publicly available and produce any identified filings that are unavailable to the public." *Id.* at 10.

Federal later told FDIC-R that "the regulatory filings [it] identified are publicly available, and [it has] not identified any filings that are unavailable to the public." Email from Angela Sullivan to Joseph Saka (Feb. 7, 2025 4:59 p.m.), D.E. 109–6. Yet FDIC-R could not locate any publicly available filings. Saka Decl. ¶ 11. Federal then declined FDIC-R's request to produce the regulatory filings, identify where they were publicly available, or search its electronically stored

information for responsive documents. *Id.* ¶ 12. Federal followed up with FDIC-R and shared that it had "not located any such filings in readily available regulatory files." Email from Scott Schmookler to Joseph Saka (May 13, 2025 8:42 p.m.), D.E. 109–8 at 2.

As this was going on, FDIC-R sought to depose Ayo Oshodi, who oversees Federal's financial institution bonds sold to banks in the United States. FDIC-R noticed Oshodi's deposition for January 24, 2025. Notice of Deposition, D.E. 109–2. But after Federal told FDIC-R that it believed Oshodi's deposition related to irrelevant matters, the parties jointly agreed to forgo Oshodi's deposition pending the outcome of the earlier discovery motions. Saka Decl. 7; Joint Mot. on Depositions ¶ 8, D.E. 93. But FDIC-R never renoticed Oshodi's deposition after the resolution of those motions because of a dispute over whether it should go forward before the court resolves these motions. Saka Decl. ¶¶ 8 & 9.

After an unsuccessful attempt to resolve these issues without court involvement, FDIC-R filed its latest discovery motions.

## II. Discussion

### A. Compliance with Earlier Order on Drafting History Documents

FDIC-R claims that Federal failed to abide by the court's instruction to supplement its responses to two requests for production—Requests 16 and 18—dealing with the drafting history of the coverage provisions at issue. FDIC-R says that this request "encompasse[s] the drafting history of the language at issue as it exists in the Federal Bond *and* subsequent revisions." Mem. in Supp. Mot. Compel Compliance at 3 (emphasis in original). Federal disagrees and says that the request seeks only "drafting history relating to a specific endorsement . . . attached to the SVB Bond." Resp. in Opp'n Mot. Compel Compliance at 4–5. To determine which party is correct, and thus whether Federal has complied with the court's order, the court must break down each request

3

Case 5:23-cv-00095-BO-RN    Document 135    Filed 09/15/25    Page 3 of 10

to determine what it required and then assess whether Federal's response meets those requirements.

### 1. Request for Production 16

The order first required Federal to supplement its response to Request for Production 16, which sought "All Documents relating to the drafting of the Extended Forgery Coverage under any Financial Institution Bond or any term, provision, condition, or exclusion upon which you rely in this case to deny coverage for the Claim at Issue." FDIC-R Req. for Prod. at 8, D.E. 100–1.

This request has two parts. To begin with, it seeks, "All Documents relating to the drafting of the Extended Forgery Coverage under any Financial Institution Bond[.]" This portion of the request includes terms that were defined at the outset of the requests for production. The term Extended Forgery Coverage means "Extended Forgery Coverage as used in the Chubb Bond (Insuring Clause 5 as modified by Endorsement No. 4)[.]" *Id.* at 2. And the term Financial Institution Bond is defined to mean "any financial institution bond form sold by Chubb to financial institutions from January 1, 2012 to the present." *Id*.

So when the relevant definitions are included, the initial portion of Request 16 asks for

> All Documents relating to the drafting of the Extended Forgery Coverage as used in the Chubb Bond (Insuring Clause 5 as modified by Endorsement No. 4) under any financial institution bond form sold by Chubb to financial institutions from January 1, 2012 to the present.

This request is not a model of clarity. But the court reads it as focusing on the drafting history of the language used in the Extended Forgery Coverage in the bond issued to SVB and that language's use in other bonds. So Federal must produce any documents related to the drafting history of that language (or materially similar language) in the bond issued to SVB and any financial institution bond form sold to a financial institution during the specified period.

4

The latter portion of Request 16 seeks "All Documents relating to the drafting of . . . any term, provision, condition, or exclusion upon which you rely in this case to deny coverage for the Claim at Issue." *Id.* at 8. This portion also uses a defined term that is relevant to the court's analysis. The term "Claim at Issue" means, "SVB's claim to coverage under the Bonds (both Chubb and Berkley) including, without limitation, those articulated in the Proof of Loss." *Id.* at 2.

So when the relevant definitions are included, the latter portion of Request 16 asks for

> All Documents relating to the drafting of any term, provision, condition, or exclusion upon which you rely in this case to deny coverage for SVB's claim to coverage under the Bonds (both Chubb and Berkley) including, without limitation, those articulated in the Proof of Loss.

Unlike the initial section of Request 16, the latter portion does not limit itself to the Extended Forgery Coverage in the SVB Bond. This portion seeks documents relating to the drafting history of any term, provision, condition, or exclusion that Federal and Berkeley relied on to deny coverage for SVB's claim, regardless of where or when the relevant language appeared. So Federal must produce responsive documents relating to the drafting history of the relevant terms as they appeared in the SVB Bond and any subsequent revision. While the request does not contain any limitations on the types of policies to be searched or a timeframe, to ensure proportionality, the court will limit the request to financial institution bond form sold to financial institutions from January 1, 2012, to the date the Defendants denied SVB's claim.

### 2. Request for Production 18

The order also required Federal to supplement its response to Request for Production 18, which sought "All Documents to or from the Surety Association of America or the Surety & Fidelity Association of America relating to the Extended Forgery Coverage under any Financial Institution Bond." *Id.* at 8.

5

Like Request 16, this request uses defined terms. When those definitions are included, this request asks for

> All Documents to or from the Surety Association of America or the Surety & Fidelity Association of America relating to the Extended Forgery Coverage as used in the Chubb Bond (Insuring Clause 5 as modified by Endorsement No. 4) under any financial institution bond form sold by Chubb to financial institutions from January 1, 2012 to the present.

As with the initial portion of Request 16, the court interprets this request as focusing on the language used in the Extended Forgery Coverage provision in the bond issued to SVB and that language's use in other bonds. So Federal must produce any documents to or from the specified entities related to that language (or materially similar language) in any financial institution bond form it sold to a financial institution during the specified period.

### 3. Need to Conduct an ESI Search

The parties also dispute whether Federal needed to conduct an ESI search under the parties' ESI Protocol to try to locate responsive documents to comply with the court's order. Federal claims that it limited its search to "physical records maintained in an archive" due to the age of the endorsement. Resp. in Opp'n Mot. Compel Compliance at 7. And it says that the endorsement was drafted so long ago that it cannot identify the persons involved in drafting it to conduct an ESI search. *Id.* But FDIC-R points out that the definition of documents in its request included ESI. Mem. in Supp. Mot. Compel Compliance at 8. And it notes that one of Federal's employees searched his email and found drafts of policy forms. *Id.* So, FDIC-R contends, an ESI search could turn up additional responsive materials. *Id.*

In general the Federal Rules require a party answering a request for production to produce responsive, non-privileged materials, including electronically stored information, that are in its "possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). But when it comes to ESI, a "party

need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." *Id.* Rule 26(b)(2)(B). To rely on that limitation, the party seeking to avoid producing ESI "must show that the information is not reasonably accessible because of undue burden or cost." *Id.*

The court sees no reason why this general rule would not apply here. Federal must search for responsive documents according to the parties ESI Protocol. Of course, the court cannot fault Federal if, after conducting a good-faith inquiry, it concludes that the passage of time has made it impossible to identify potential custodians beyond a specified date. But if Federal reaches that conclusion, it must explain to FDIC-R, in detail and under penalty of perjury, the steps it took to identify potential custodians and why it could not do so beyond a certain point. Similarly, if it otherwise contends that ESI is not reasonably accessible because of undue burden or cost, it must provide FDIC-R with a detailed explanation, under penalty of perjury, why that is the case.

### B. Regulatory Filings

The parties next dispute whether Federal complied with its obligation to confirm that regulatory filings were publicly available and produce any filings that are not.

Federal did, of course, comply with the court's order in a strictly literal sense. Its counsel emailed FDIC-R's counsel and said, "[W]e confirm the regulatory filings we identified are publicly available, and we have not identified any filings that are unavailable to the public." Email from Angela Sullivan to Joseph Saka (Feb. 7, 2025 at 4:59 p.m.).

Yet the court has concerns that Federal's confirmation is not entirely truthful because the explanation in Federal's response brief differs from its confirmation email. Its brief explained that "[p]ursuant to the Order, on February 7, 2025, Federal confirmed that any regulatory filings (to the extent that they exist) were publicly filed (and therefore are publicly available)." Resp. in

Opp'n Mot. to Compel at 6. So it appears that Federal is equating the fact that it filed documents with a governmental entity at some point with that document's public availability today.

But Federal's position in its brief is inconsistent with its position at the hearing on the earlier motion. When discussing this issue at the hearing, Federal's attorney said,

> They have every disclosure of every filing for this form since 1997. And if they want to go pull it from any state, they are free to do that. But I quite frankly think the task of us just pulling publicly available documents that they can easily gather if they want, isn't worthy of a motion to compel.

Hr'g Tr. at 25:18–23, D.E. 89. FDIC-R's attorney then said that if Federal was "willing to represent that at all, regulatory filings are publicly available" it would "accept that representation" and withdraw that portion of its motion. *Id.* at 26:1–4. Federal's counsel confirmed what he shared was his "understanding" based on what he learned "from [his] clients." *Id.* at 26:5–6. FDIC-R's counsel remarked that he would like "more than counsel's understanding," but would be satisfied if Federal's counsel would "confirm that [understanding] with his client[.]" *Id.* at 26:7–9. The court later ordered Federal to provide that confirmation.

So Federal's counsel represented to the court and opposing counsel that the responsive regulatory filings were publicly available, meaning that FDIC-R could "easily gather" them on its own. That is what Federal was supposed to confirm. But it appears that what Federal was really confirming was that it filed documents with a public entity and then assumed they were publicly available. That leaves FDIC-R in the same position as it was before the court issued its order.

So the court will require Federal to search for and produce the documents it previously identified as responsive to this discovery request. This search must include searching relevant sources of electronically stored information. If Federal claims that it cannot locate the identified records, it must explain to FDIC-R, in detail and under penalty of perjury, the steps it took to locate the records and why it is unable to do so.

### C. Oshodi Deposition

Under the Federal Rules, a party may, with some exceptions not relevant here, "depose any person . . . without leave of court[.]" Fed. R. Civ. P. 30(a)(1). If a party wishes to take a deposition, it must "give reasonable written notice to every other party" and include certain information in that notice. *Id.* Rule 30(b)(1). The party serving the notice may use a subpoena to compel the deponent's attendance. *Id.* Rule 30(a)(1).

Given these provisions, there is no need for the court to compel Federal to produce Oshodi for a deposition. FDIC-R can already require his attendance by serving him with a deposition notice and subpoena.[1] If Federal believes that it is improper for FDIC-R to take Oshodi's deposition, it can seek a protective order. But if it does not, Oshodi must comply with a properly issued notice and subpoena. Failure to do so may result in sanctions, Fed. R. Civ. P. 37(d)(1)(A)(i), or initiation of contempt proceedings, *id.* Rule 45(g).

As a result, the court denies as moot the portion of FDIC-R's motion requesting an order to require Federal to produce Oshodi for a deposition.

### D. Payment of Expenses

The Federal Rules contain provisions regarding the payment of expenses incurred as a result of motions to compel and motions to compel compliance with an earlier discovery order. If a party fails to comply with a discovery order "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure[.]" Fed. R. Civ. P. 37(b)(2)(C). The only exceptions to this general rule arise if "the failure was substantially justified or other circumstances make an award of expenses

---

[1] The court, of course, expects that FDIC-R will make a good-faith effort to coordinate the deposition date with Federal, and that Federal will make a good-faith effort to make Oshodi available. But if those efforts are unsuccessful, the Federal Rules give FDIC-R the ability to unilaterally notice Oshodi's deposition.

unjust." *Id.* Similarly, if a court grants a motion to compel in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." *Id.* Rule 37(a)(5)(C).

Since FDIC-R has prevailed, at least partially, on both motions, it is entitled to recover the expenses, including attorney's fees, incurred in connection with those motions. If it wishes to do so, it must meet and confer with Federal within 7 days from entry of this order about the amount it seeks to recover. If the parties cannot agree on that amount, FDIC-R must, within 14 days from entry of this order, file a memorandum of no more than 15 pages justifying the expenses it seeks to recover. The memorandum should separately address the expenses incurred for each motion. And it should be sure to include all information required by Supreme Court and Fourth Circuit precedent for the court to assess the request. Federal may file a response of no more than 15 pages within 14 days from the date FDIC-R files its memorandum. The response may address why the exceptions to the general requirement to award expenses apply.

### III. Conclusion

For all these reasons, the court grants FDIC-R's motion to compel compliance (D.E. 100) in full and its motion to compel (D.E. 109) in part. Federal must supplement its response as described above within 14 days from the date of entry of this order. The parties may agree in writing to extend this deadline. If there are further disputes over Federal's discovery obligations under this order, the parties should notify the Clerk of Court, and the court will set a hearing to address them.

If FDIC-R wishes to recover the expenses it incurred in connection with this motion, it must follow the instructions provided above.

Dated: September 15, 2025

_____
Robert T. Numbers, II
United States Magistrate Judge

10
Case 5:23-cv-00095-BO-RN    Document 135    Filed 09/15/25    Page 10 of 10