**IN THE UNITED STATES DISRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SVB FINANCIAL GROUP and FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK, | ) ) ) ) | **Case No. 5:23-cv-00095-BO** |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF FEDERAL INSURANCE COMPANY AND BERKLEY REGIONAL** |
| FEDERAL INSURANCE COMPANY and BERKLEY REGIONAL INSURANCE COMPANY, | ) ) ) ) | **INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56** |
| Defendants. | ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 56.1(a), Defendants Federal Insurance Company and Berkley Regional Insurance Company submit this proposed Statement of Undisputed Facts in Support of their Motion for Summary Judgment:

| No.: | Undisputed Fact: | Supporting Evidence: |
|---|---|---|
| 1. | SVB Financial Group and Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank (collectively "SVB") seek coverage under a Financial Institution Bond (the "Bond") issued by Federal Insurance Company. | Exhibit 2, FDIC-R's Answers to Interrogatories, No. 4; Dkt. 1-3, pp. 2, 4, ¶¶ 1, 10. |

1

| | | |
|---|---|---|
| 2. | SVB seeks coverage under an excess Financial Institution Bond issued by Berkley Regional Insurance Company. | Exhibit 2, FDIC-R's Answers to Interrogatories, No. 4; Dkt. 1-3, pp. 2, 4, ¶¶ 1, 10. |
| 3. | SVB alleges that Elliot Smerling forged signatures on Subscription Agreements and a Limited Partnership Agreement. | Exhibit 2, FDIC-R's Answers to Interrogatories, No. 4, 5; Dkt. 1-3, pp. 2, 4, ¶¶ 1, 10. |
| 4. | Insuring Clause 5 of the Bond provides coverage for:<br><br>Loss resulting directly from the ASSURED having, in good faith, for its own account or the account of others:<br><br>a. acquired, sold or delivered, or given value, extended credit or assumed liability, in reliance on any original:<br><br>(1) **Certificated Security**,<br><br>(2) deed, mortgage or other instrument conveying title to, or creating or discharging a lien on, real property,<br><br>(3) **Certificate of Origin or Title**,<br><br>(4) **Document of Title**,<br><br>(5) **Evidence of Debt**,<br><br>(6) corporate, partnership or personal **Guarantee**,<br><br>(7) **Security Agreement**, or<br><br>(8) **Instruction**, which<br><br>i. bears a **Forgery**, or | Exhibit 1, Insuring Clause 5, pp. 8-9. |

2

| | | |
|---|---|---|
| | ii. is fraudulently altered, or<br><br>iii. is lost or stolen, . . . .<br><br>***<br><br>Actual physical possession, and continued actual physical possession if taken as collateral, of the items listed in a.(1) through a.(8) above by the ASSURED or a correspondent Federal or State chartered deposit institution or an authorized representative of the ASSURED is a condition precedent to the ASSURED having relied on such items. Release or return of such collateral is an acknowledgment by the ASSURED that it no longer relies on such collateral.<br><br>For the purpose of this INSURING CLAUSE, a mechanically reproduced facsimile signature is treated the same as a handwritten signature. | |
| 5. | The Bond defines the term **Guarantee** as "a written undertaking obligating the signer to pay the debt of another to the ASSURED or its assignee . . ., if the debt is not paid in accordance with its terms." | Exhibit 1, Conditions and Limitations, § 1.o., p. 17. |
| 6. | The Bond defines **Forgery** as "the signing of the name of another natural person with the intent to deceive . . . ." | Exhibit 1, Conditions and Limitations, § 1.n., p. 17. |
| 7. | The Bond defines **Security Agreement** as "an agreement which creates an interest in personal property or fixtures and which secures payment or performance of an obligation." | Exhibit 1, Conditions and Limitations, § 1.x., p. 18. |

| | | |
|---|---|---|
| 8. | The Bond provides the following exclusion, applicable to all insuring clauses except Insuring Clauses 1, 4, and 5: <br><br> **This bond does not directly or indirectly cover:** <br><br> a. loss resulting from the complete or partial non-payment of default on any **Loan** whether such **Loan** was procured in good faith or through trick, artifice, fraud or false pretenses provided, however, this SECTION 4.a. shall not apply to INSURING CLAUSE 8. or 9.; <br><br> b. loss resulting from forgery or any alteration; . . . . | Exhibit 1, Conditions and Limitations, § 4.a.-b., p. 22. |
| 9. | On December 1, 2020, Smerling contacted SVB about extending a line of credit to his private equity fund, referred to as JES Fund III ("JES Fund"). | Dkt. 1-3, pp. 7-8, ¶¶ 29-30. |
| 10. | Smerling identified investors with "strangely generic" names. | Exhibit 4, Tom Davies Deposition, pg. 54:12-55:12. |
| 11. | Smerling claimed investment in companies with no discernible presence. | Exhibit 4, Tom Davies Deposition, pg. 47:20-48:15. |
| 12. | Smerling provided facially contradictory financial records. | Exhibit 4, Tom Davies Deposition, pg. 137:7-138:7. |
| 13. | SVB's personnel identified the risk that Smerling's alleged business was "entirely made up." | Exhibit 3, Josh Cashwell 11-8-24 Deposition, pg. 77:17-21; Exhibit 7, Lauren Gates-Fraher Deposition, pg. 115:7- |

4

| | | 20; Exhibit 6, Kristy Vlahos Deposition, pg. 85:13-86:11; Exhibit 5, Erin Caulfield Deposition, pg. 73:14-74:9. |
|---|---|---|
| 14. | Tom Davies, an SVB executive, reviewed the signature pages, after the loan had been approved, for the Subscription Agreements and concluded they appeared to be signed by the same person. | Exhibit 4, Deposition of Tom Davies, 43:8-19. |
| 15. | Josh Cashwell, SVB's relationship manager, also concluded the Subscription Agreements appeared to be signed by the same person. | Exhibit 3, Josh Cashwell 11-8-24 Deposition, pg. 42:19-22, 42:24. |
| 16. | Upon approval of the loan, Smerling took a $94,957,322.65 advance on that line of credit which he used to pay down JES Fund's prior line of credit. | Dkt. 1-3, p. 8, ¶¶ 32-33. |
| 17. | SVB conducted post-closing due diligence and uncovered that Smerling had provided fraudulent financial information. | Exhibit 4, Deposition of Tom Davies, 43:8-19. |
| 18. | Smerling presented SVB with a Limited Partnership Agreement and Subscription Agreements. | Dkt. 1-3, p. 8, ¶ 31; Exhibit 9; Exhibit 10. |
| 19. | SVB's outside legal counsel, Cadwalader, Wickersham, & Taft L.L.P. ("Cadwalader"), was responsible for gathering and reviewing the Subscription Agreements. | Exhibit 11, Deposition of Timothy Hicks, 17:2-12, 17:16-21. |

| | | |
|---|---|---|
| 20. | Cadwalader obtained the Subscription Agreements from Smerling as an attachment to an email. | Exhibit 11, Deposition of Timothy Hicks, 17:2-12, 17:16-21. |
| 21. | Cadwalader did not receive the wet-ink version of the Subscription Agreements. | Exhibit 11, Deposition of Timothy Hicks, 17:2-12, 17:16-21. |
| 22. | SVB received the Subscription Agreements as an attachment to an email. | Exhibit 2, Josh Cashwell 11-8-24 Deposition, pg. 88:12-88:25. |
| 23. | SVB never obtained the wet-ink version of the Subscription Agreements. | Exhibit 2, Josh Cashwell 11-8-24 Deposition, pg. 88:12-88:25. |
| 24. | SVB could have requested the wet-ink version of the Subscription Agreements, but chose not to do so. | Exhibit 12, Josh Cashwell 11-12-24 Deposition, pg. 171:03-171:06; Exhibit 5, Caufield Deposition, pg. 42:09-42:12. |
| 25. | SVB solely received PDF copies of the Subscription Agreements. | Exhibit 13, Kelley Deposition, pg. 70:16-71:10 (objections omitted); pg. 84:17-84:20. |

| | | |
|---|---|---|
| 26. | The Limited Partnership Agreement and Subscription Agreements were purportedly hand-executed using a physical writing utensil, a pen. | Exhibit 3, Josh Cashwell 11-8-24 Deposition, pg. 88:12-88:25; Exhibit 11, Deposition of Timothy Hicks, 17:2-12, 17:16-21; Exhibit 13, Kelley Deposition, pg. 70:16-71:10 (objections omitted); pg. 84:17-84:20. |
| 27. | Because SVB did not receive the wet-ink version of the Subscription Agreements and solely received them as an attachment to an email, the versions received by SVB were a "faithful representation." | Exhibit 13, Kelley Deposition, pg. 83:22-84:05. |
| 28. | SVB did not request or require the wet-ink version of the Limited Partnership Agreement or Subscription Agreements. | Exhibit 3, Josh Cashwell 11-8-24 Deposition, pg. 88:12-88:25; Exhibit 13, Kelley Deposition, pg. 70:16-71:10 (objections omitted). |
| 29. | SVB extended the loan to Smerling before its employees reviewed the Subscription Agreements. | Exhibit 3, Josh Cashwell 11-8-24 Deposition, pg., 42:7-13, 42:15-17; Exhibit 5, Deposition of Erin Caulfield, 16:2-10; Exhibit 6, Deposition of Kristy Vlahos, |

| | | 23:17-24; Exhibit 7, Deposition of Lauren Gates, 18:9-13; 18:22-19:1; Exhibit 8, Deposition of Andy Enroth, 18:15-18. |
|---|---|---|
| 30. | The Limited Partnership Agreement purportedly reflected the general terms governing the partnership. | Exhibit 9. |
| 31. | The Limited Partnership Agreement provides: Each Limited Partner agrees that . . . obligations under any Subscription Facility (including obligations of any Parallel Partnership, Alternative Vehicle or Feeder Fund that is a co-borrower or co-guarantor under such Subscription Facility) shall be payable from any Partnership source, including, without limitation, Remaining Commitments, proceeds of Portfolio Investments, and receipts or revenues of any character (in each case regardless of whether any credit extended under any Subscription Facility is related or attributable to a particular Portfolio Investment or transaction). | Exhibit 9, Limited Partnership Agreement, SVBC-S-0100-00006281, p. 16, 4.5(b). |
| 32. | The Subscription Agreements purportedly identified investors that subscribed to the alleged partnership. | Exhibit 10. |
| 33. | A wet-ink version is the first rendering of a document. | Exhibit 13, Kelley Deposition, pg. 204:17-204:24, 205:16-205:21. |
| 34. | If a document is originally signed by hand on paper, a PDF version of that document is a copy. | Exhibit 13, Kelley Deposition, pg. 85:03-85:09. |

8

Dated: May 5, 2026

Respectfully submitted,

/s/ Scott L. Schmookler

Scott L. Schmookler
Illinois State Bar. No. 6238034
sschmookler@grsm.com
Angela Sullivan
Illinois State Bar No. 6330028
asullivan@grsm.com
**GORDON REES SCULLY MANSUKHANI**
One North Franklin, Suite 800
Chicago, IL 60606
312-980-6779
Fax 312-565-6511
*Attorneys for Federal Insurance Company*
-and-
Suzanne R. Walker
**GORDON REES SCULLY MANSUKHANI**
421 Fayetteville St., Suite 330
Raleigh, North Carolina 27601
swalker@grsm.com
984-242-1811
Fax 919-741-5840
N.C. State Bar No.: 37774
Local Civil Rule 83.1(d) Attorney for Federal
Insurance Company

/s/ *Michael Keeley*

Michael Keeley
Texas State Bar No. 11157800
mkeeley@clarkhill.com
Holly Naehritz
Texas State Bar No. 24083700
hnaehritz@clarkhill.com
CLARK HILL PLC
901 Main Street, Suite 6000
Dallas, TX 75202-3794
(214) 651-4300
(214) 651-4330 Fax
*Attorneys for Berkley Regional Insurance Company*
-and-

9

Heather G. Connor
NC State Bar No. 27563
heather.connor@mgclaw.com
David M. Fothergill
NC State Bar No. 31528
david.fothergill@mgclaw.com
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, NC 28230
(704) 404-4664
(704) 643-2376 Fax
*Local Civil Rule 83.1(d) Counsel for Defendant*
*Berkley Regional Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing using the CM/ECF system, which

will send notification of such filing to all counsel of record using the CM/ECF system;

/s/ Scott L. Schmookler_____
Scott L. Schmookler

10