# IN THE UNITED STATES DISRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| SVB FINANCIAL GROUP and FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK, | ) ) ) | **Case No. 5:23-cv-00095-BO** |
| | ) | |
| Plaintiffs, | ) ) | **FEDERAL INSURANCE COMPANY AND BERKLEY REGIONAL INSURANCE COMPANY'S RESPONSE IN OPPOSITION OF SVB FINANCIAL GROUP'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY and BERKLEY REGIONAL INSURANCE COMPANY, | ) ) ) | |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................I

TABLE OF AUTHORITIES ....................................................................................... II

INTRODUCTION......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 2

I.    THE UNDISPUTED FACTS PRECLUDE COVERAGE AND MANDATE SUMMARY JUDGMENT FOR INSURERS................................................... 2

    A.    THE ADMITTED FAILURE TO OBTAIN THE WET-INK ORIGINALS PRECLUDES COVERAGE. ................................................... 3

        1.    APPLICATION OF THE DICTIONARY DEFINITION OF "ORIGINAL" PRECLUDES COVERAGE. ........................................... 4

        2.    SVB' COUNTERARGUMENTS ARE IMPERMISSIBLE ATTEMPTS TO CONTRAVENE THE BOND, THE UNDISPUTED FACTS, AND CALIFORNIA LAW. ....................................................... 6

    B.    FAILURE TO OBTAIN ACTUAL PHYSICAL POSSESSION PRECLUDES PROOF OF RELIANCE. ........................................................ 16

    C.    THE AGREEMENTS ARE NOT QUALIFYING DOCUMENTS................. 18

        1.    THE AGREEMENTS ARE NOT SECURITY AGREEMENTS. ..... 19

        2.    THE AGREEMENTS ARE NOT GUARANTEES............................. 20

        3.    THE LOAN AGREEMENT IS IRRELEVANT BECAUSE IT WAS NOT FORGED......................................................................... 21

II.    IN THE ALTERNATIVE, THE REMAINING ELEMENTS OF SVB PLAINTIFFS' CLAIM IMPLICATE A GENUINE DISPUTE OF MATERIAL FACT. ................. 24

    A.    SVB'S EXTENSION OF CREDIT DESPITE INDICIA OF FRAUD CREATES A GENUINE ISSUE OF MATERIAL FACT ON WHETHER IT ACTED IN GOOD FAITH. ....................................................................... 25

    B.    SVB'S EXTENSION OF CREDIT AGAINST NON-EXISTENT COLLATERAL RAISES A GENUINE ISSUE OF MATERIAL FACT ON DIRECT CAUSATION.......................................................................... 27

CONCLUSION ........................................................................................................... 29

CERTIFICATION OF COMPLIANCE...................................................................... 32

CERTIFICATE OF SERVICE ................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*ACL Tech. v. Northbrook Prop. & Cas. Ins. Co.*,
22 Cal. Rptr. 2d 206 (Cal. Ct. App. 1993) ............................................................................ 14

*Alerus v. St. Paul*,
2012 Minn. App. Unpub. LEXIS 100 (Minn. App. 2012) ....................................................... 28

*Am. Star Ins. Co. v. Ins. Co. of the West*,
232 Cal. App. 3d 1320 (1991) ................................................................................................ 7

*Babbitt v. Blauert Const., Inc.*,
No. 06-0766, 2008 WL 2231507 (Ariz. Ct. App. May 27, 2008) ............................................ 15

*Banc of Cal. Nat'l Ass'n v. Fed. Ins. Co.*,
No. 21-56179, 2022 WL 17583056 (9th Cir. Dec. 12, 2022) .................................................. 19

*Banc of Cal., Nat'l Ass'n v. Fed. Ins. Co.*,
686 F. Supp. 3d 928 (C.D. Cal. 2023) ................................................................................... 29

*Bank of Bozeman v. BancInsure, Inc.*,
404 F. App'x. 117 (9th Cir. 2010) ....................................... 4, 5, 6, 8, 9, 13, 27, 28

*Beach Cmty. Bank v. St. Paul Mercury Ins. Co.*,
635 F.3d 1190 (11th Cir. 2011) ............................................................................................. 25

*BP W. Coast Prods., LLC v. Crossroad Petroleum, Inc.*,
No. 12-CV-665, 2018 WL 264120 (S.D. Cal. Jan. 2, 2018) ................................................... 21

*Certain Underwriters at Lloyd's of London v. Super. Ct.*,
16 P.3d 94 (Cal. 2001) ......................................................................................................... 10

*Citizens Bank Holding, Inc. v. Atl. Specialty Ins. Co.*,
No. 15-V-782, 2016 WL 8505590 (E.D. Wis. 2016) ............................................................. 22

*Citizens Banking Corp. v. Gulf Ins. Co.*,
No. 03-CV-74044, 2005 WL 1983248 (E.D. Mich. Aug. 10, 2005) ......................................... 9

*Community State Bank of Galva v. Hartford Insurance Co.*,
542 N.E.2d 1317 (Ill. App. 1989) ......................................................................................... 24

*Delgado v. Heritage Life Ins. Co.*,
157 Cal. App. 3d 262 (1984) .................................................................................................. 7

*Detroit Ent., LLC v. Am. Guarantee & Liab. Ins. Co.*,
660 F. Supp. 3d 631 (E.D. Mich. 2023) ................................................................................ 15

*Empire State Bank v. St. Paul Fire & Marine Ins. Co.*,
441 N.W.2d 811 (Minn. Ct. App. 1989) ................................................................................ 22

*FDIC v. RLI Ins. Co.*,
784 F.3d 1104 (7th Cir. 2015) .............................................................................................. 19

*FDIC v. Cincinnati*,
981 F. Supp. 2d 1324 (N.D. Ga. 2013) .................................................................................. 18

*Fiorella v. Travelers Prop. Cas. Ins. Co.*,
36 Kan. App. 2d 597 (2006) ................................................................................................. 15

*First Nat'l Bank of S.C. of Columbia v. Glens Falls Ins. Co.*,
304 F.2d 866 (4th Cir. 1962) ................................................................................................ 22

*First Nat'l Bank v. Cincinnati Ins. Co.*,
No. 03-C-241, 2005 WL 2460719 (E.D. Wis. Oct. 5, 2005) .................................................. 27

*First Union Corp. v. U.S. Fid. and Guar. Co.*
730 A.2d 278 (Md. Ct. App. 1999) ....................................................................................... 22

*Flagstar Bank v. Fed. Ins. Co.*,
260 F. App'x 820 (6th Cir. 2008) ................................................................................ 28

*Forcht Bank v. BancInsure*,
514 F. App'x 586 (6th Cir. 2013) ........................................................................... 27, 28

*Fremont Reorganizing Corp. v. Fed. Ins. Co.*,
No. SACV09-01208, 2013 WL 12124105, (C.D. Cal. Apr. 3, 2013) .............. 4, 5, 6, 8, 17, 18

*French Am. Banking Corp. v. Flota Mercante Grancolombiana*,
752 F. Supp. 83 (S.D. N.Y. 1990) .............................................................................. 29

*French Am. Banking v. Flota Mercante Grancolombiana*,
609 F. Supp. 1352 (S.D.N.Y. 1985)............................................................................ 25

*Hadland v. NN Investors Life Ins. Co.*,
30 Cal. Rptr. 2d 88 (Cal. Ct. App. 1994) .................................................................... 13

*Hamilton Bank v. Ins. Co. of N. Am.*,
557 A.2d 747 (Pa. Super. Ct. 1989)............................................................................ 17

*Home Sav. & Loan Ass'n v. Fid. & Dep. Co. of Md.*,
742 F.2d 831 (4th Cir. 1984) ..................................................................................... 28

*In re Larsen*,
No. 2:16-18600, 2019 WL 4621256 (C.D. Cal. Sept. 23, 2019) ................................. 9, 12

*In re Mayfield*,
No. 16-22134, 2016 WL 3958982 (E.D. Cal. July 15, 2016)........................................... 12

*In re Mullins*,
125 B.R. 808 (Bankr. E.D. Cal. 1990) ..................................................................... 5, 12

*In re Patacsil*,
No. 20-23457, 2023 WL 5507229 (E.D. Cal. Feb. 28, 2023)...................................... 9, 12

*Jefferson Bank v. Progressive Cas. Ins. Co.*,
Civ. A. No. 90-584, 1990 WL 180585 (E.D. Pa. Nov. 19, 1990)..................................... 21

*KW Bancshares v. Syndicates of Underwriters at Lloyd's*,
965 F. Supp. 1047 (W.D. Tenn. 1997)................................................................. 19, 20, 29

*Liberty Nat'l Bank v. Aetna*,
568 F. Supp. 860 (D.N.J. 1983) .............................................................................. 27, 29

*Marsh Inv. v. Langford*,
721 F.2d 1011 (5th Cir. 1983) ................................................................................... 25

*McKee v. State Farm Fire & Cas. Co.*,
193 Cal. Rptr. 745 (Cal. Ct. App. 1983)................................................................... 14, 15

*N.C. Nat'l Bank v. U.S. Cas. Co.*,
208 F. Supp. 452 (W.D. N.C. 1962) ........................................................................... 22

*O'Brien v. Progressive N. Ins. Co.*,
785 A.2d 281 (Del. 2001) ......................................................................................... 15

*Omnisource Corp. v. CNA/Transcontinental Ins. Co.*,
949 F. Supp. 681 (N.D. Ind. 1996) ............................................................................ 24

*Parkans Int'l v. Zurich Ins. Co.*,
299 F.3d 514 (5th Cir. 2002) .................................................................................... 24

*R.E.L. Enters. v. Oldcastle, Inc.*,
226 Cal. Rptr. 3d 677 (Cal. Ct. App. 2017) ............................................................ 11, 23

*Reliance Ins. Co. v. Capital Bancshares, Inc./Capital Bank*,
685 F. Supp. 148 (N.D. Tex. 1988) ............................................................................ 28

*Republic Nat'l Bank v. Fid. & Deposit Co.*,
  894 F.2d 1255 (11th Cir. 1990) ................................................................ 17, 18
*Scott v. Cont'l Ins. Co.*,
  51 Cal. Rptr. 2d 566 (Cal. Ct. App. 1996) .................................................. 4
*Scottsdale Ins. Co. v. Fineman*,
  No. 4:20-cv-00368, 2021 WL 411360 (N.D. Cal. Feb. 5, 2021) ................ 4
*Shaw v. Regents of Univ. of Cal.*,
  67 Cal. Rptr. 2d 850 (Cal. Ct. App. 1997) ................................................ 11, 23
*Transportation Alliance Bank, Inc. v. BancInsure, Inc.*,
  No. 1:11CV148, 2014 WL 684691 (D. Utah 2014) ................................... 9
*Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys.*,
  313 F.3d 295 (5th Cir. 2002) .................................................................... 24
*Valley Cmty. Bank v. Progressive Cas. Ins. Co.*,
  854 F.Supp.2d 697 (N.D. Cal. 2012) .................................................... 4, 8, 19, 20
*Versaci v. Super. Ct.*,
  26 Cal. Rptr. 3d 92 (Cal. Ct. App. 2005) ................................................ 23
*Wilbanks Secs. v. Nat'l Union Fire Ins.*,
  No. CIV-16-294-R, 2018 WL 738904 (W.D. Okla. 2018) ....................... 22

**Other Authorities**
Cal. Civ. Code §§ 1633.1-1633.17 ................................................................ 8
Cal. Civ. Code §§ 1633.2(h) .......................................................................... 8
Cal. Civ. Code §§ 1633.5 ............................................................................... 8
Cal. Com. Code § 1201 .................................................................................. 25

## INTRODUCTION

SVB Financial Group and SVB Financial Trust (together, the "SVB Plaintiffs") seek coverage under Insuring Clause 5 of the Financial Institution Bond ("Bond")[1] on the theory that Elliot Smerling secured a $150 million loan to a non-existent entity, the JES Fund, based upon a Limited Partnership Agreement purporting to create the fund and a Subscription Agreement purportedly executed by alleged investors (collectively "Agreements"). While the SVB Plaintiffs seek coverage on the theory that both Agreements bear a **Forgery**,[2] they must prove the following four other elements of coverage: (1) the bank ("SVB") received the "original" of the Agreements; (2) the Agreements are documents covered under Insuring Clause 5; (3) SVB relied, in good faith, upon the Agreements; and (4) the claimed loss resulted directly from such reliance.[3]

Insurers sought summary judgment on three of these elements of coverage. First, while SVB made the loan in reliance on PDF copies of the Agreements (not the wet-ink original), SVB did not purchase coverage against risky lending practices relying only upon copies. Instead, it purchased coverage that required possession of the original. (Dkt. No. 199, pg. 15-20). Second, Insuring Clause 5 conditions reliance upon "actual physical possession" of the allegedly forged document(s). Yet FDIC admits that SVB never obtained physical possession of the Agreements— thereby precluding proof of reliance. (*Id.* at 24-26). Third, Insuring Clause 5 applies only if one of the documents enumerated therein bears a **Forgery**. Here, the Agreements, even if they bear a forgery, are not one of those documents and, thus, the claim fails. (*Id.* at 26-28).

SVB Plaintiffs' brief overlaps with FDIC's motion for summary judgment. (FDIC'S Mem.

---

[1] The primary Financial Institution Bond was issued by Federal Insurance Company. Berkley Regional Insurance Company issued an excess, follow form Financial Institution Bond.

[2] Bolded terms are defined in the Bond. FDIC has not produced any admissible evidence that the Agreements bear a **Forgery**. It cited Smerling's plea agreement, but Smerling never admitted to forging the Limited Partnership Agreement. (Dkt. No. 208, Defs.' SMF ¶ 59-60; Dkt. No. 202-19, pg. 9-10, 14).

[3] Dkt. No. 208, Defs.' SMF ¶ 4; Defs.' Ex. 1, Dkt. No. 199-3, Insuring Clause 5, pp. 8-9.

1

in Supp. of Mot. Summ. J., Dkt. No. 204). Rather than repeat their response, Insurers incorporates it by reference. Insurers will first explain in **Section I** why SVB Plaintiffs cannot prove the three above-detailed elements of coverage and why that failure precludes coverage. Insurers will—in an abundance of caution only—address the remaining elements in **Section II** to explain why there is no basis for summary judgment for SVB Plaintiffs.

## BACKGROUND

Insurers detailed the facts underlying this case and precluding coverage in their motion for summary judgment (Dkt. No. 208) and in their response to FDIC's motion for summary judgment (Dkt. No. 212). To avoid unnecessary duplication, Insurers incorporate those facts herein and repeat the two facts necessary for this Court to grant summary judgment in their favor and against SVB Plaintiffs. First, while claiming SVB received the original Agreements, witnesses agree that SVB did not receive the wet-ink original of the Agreements. Instead, SVB accepted a scanned copy.[4] Second, while SVB Plaintiffs persistently refer to electronically executed documents, the Agreements were executed by hand with a pen and were not electronically executed.[5] The combination of these two facts, along with the terms of the Agreements, demonstrate that SVB did not receive the original Agreements, SVB did not have "actual physical possession" of the Agreements, and the Agreements are not qualifying documents covered under Insuring Clause 5.

## ARGUMENT

I.    **THE UNDISPUTED FACTS PRECLUDE COVERAGE AND MANDATE SUMMARY JUDGMENT FOR INSURERS.**

As explained in Insurers' motion for summary judgment, three issues are ripe for summary judgment: (1) SVB's failure to obtain wet-ink original; (2) SVB's failure to obtain actual physical

---

[4] Dkt. No. 208, Defs.' SMF ¶¶ 20-23; Dkt. No. 199-13, Dep. of Timothy Hicks, at 17:2-12, 17:16-21; Dkt. No. 199-5, Josh Cashwell 11-8-24 Dep., at 88:12-88:25.
[5] Defendants' Response to Plaintiffs' Statement of Fact ("Defs' SMF Resp."), ℙ 1, 16, Exh. 1, Moyle Dep., at 54:21-55:04; Dkt. No. 199-15, Kelley Dep., at 71:16-71:10; 206:16-206:19.

2

possession of the allegedly forged documents; and (3) the Agreements do not qualify as a **Security Agreement** or **Guarantee**. These issues are ripe for summary judgment because (1) the first two issues depend upon a single undisputed fact– namely, that SVB never obtained the wet-ink originals of the Agreements and accepted an electronic copy;[6] and (2) the final issue requires a comparison of the terms of the Agreements to the contractual definition of **Security Agreement** and **Guarantee**. Insurers will first explain why resolution of these issues based upon undisputed facts mandates summary judgment for them and against SVB Plaintiffs.

A.      THE ADMITTED FAILURE TO OBTAIN THE WET-INK ORIGINALS PRECLUDES COVERAGE.

The parties agree that SVB Plaintiffs received a scanned copy of the Agreements.[7] Nonetheless, SVB Plaintiffs argue that the Agreements were executed electronically and, as such, are "essentially" an original. This entire argument teeters on the false notion that the Agreements were electronically executed. They were not. This case has nothing to do with electronically executed documents, digital signatures, or electronically created documents because the Agreements were admittedly signed in "wet-ink" with a pen![8]

An original existed (i.e., the version signed with a pen) and SVB easily could have required Smerling to provide that original,[9] but it recklessly chose not to do so and decided to accept a scanned copy.[10] By the time SVB had made the loan,[11] it had already purchased the Bond and knew that it conditioned coverage upon receipt of the original.[12] SVB simply chose to ignore the conditions of coverage and now attempts to rewrite the Bond.

---

[6] Dkt. No. 208, Defs.' SMF ¶¶ 22, 23; Dkt. 199-5, Josh Cashwell 11-8-24 Dep., pg. 88:12-88:25.
[7] Dkt. No. 208, Defs.' SMF ¶ 25, 26; Dkt. No. 199-15, Kelley Dep., pg. 70:16-71:10 (objections omitted), pg. 84:17-84:20.
[8] Dkt. No. 208, Defs.' SMF ¶¶ 22, 23; Dkt. 199-5, Josh Cashwell 11-8-24 Dep., at 88:12-88:25.
[9] Defs.' SMF Resp., ℙ 57; Dkt. 199-5, 11-8-24 Cashwell Dep., pg. 54:17-55:05, 171:03-171:06; Dkt 199-15, Kelley Dep., pg. 79:12-81:22.
[10] Dkt. No. 208, Defs.' SMF ¶ 2-3; Dkt. No. 199-5, Josh Cashwell 11-8-24 Dep., at 51:13-51:25.
[11] Dkt. No. 208, Defs.' SMF ¶ 61; *compare* Dkt. No. 202-15, pg. 32 to Dkt. 202-09, pg. 6.
[12] Dkt. No. 208, Defs.' SMF ¶ 62; Dkt. 202-09, pg. 6.

3

Because Insuring Clause 5 expressly conditions coverage upon possession of the original and the term "original" has a commonly accepted meaning, the Ninth Circuit and federal district courts applying California law agree there is no coverage for lending based upon copies. *See, e.g.*, *Bank of Bozeman v. BancInsure, Inc.*, 404 F. App'x. 117 (9th Cir. 2010); *Fremont Reorganizing Corp. v. Fed. Ins. Co.*, No. SACV09-01208, 2013 WL 12124105, at *13 (C.D. Cal. Apr. 3, 2013); *Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, 854 F.Supp.2d 697, 706-07 (N.D. Cal. 2012). Under *Bank of Bozeman*, SVB's decision to accept a scanned copy of hand-signed documents precludes coverage as a matter of law and mandates summary judgment for Insurers. SVB Plaintiffs' arguments to the contrary violate California law and have no merit. Insurers will first explain why application of Insuring Clause 5 in accordance with California law precludes coverage in **Section I.A.1** and then debunk SVB's contrary arguments in **Section I.A.2**.

        **1.**         ***Application of the Dictionary Definition of "Original" Precludes Coverage.***

Insuring Clause 5 expressly states that it applies only if SVB "extended credit . . . in reliance on any ***original*** . . . ."[13] Because the Bond does not define the term "original" and SVB Plaintiffs admit the term has no specialized trade meaning,[14] California law dictates that the Court apply the commonly understood meaning of that term as reflected in a dictionary. *Scottsdale Ins. Co. v. Fineman*, No. 4:20-cv-00368, 2021 WL 411360, at *5 (N.D. Cal. Feb. 5, 2021); *see also Scott v. Cont'l Ins. Co.*, 51 Cal. Rptr. 2d 566, 569-70 (Cal. Ct. App. 1996). Despite California law mandating application of a dictionary definition, SVB never addresses that definition because

---

[13] Dkt. No. 208, Defs.' SMF ¶ 4; Dkt. No. 199-3, Insuring Clause 5, pp. 8-9.

[14] Plaintiffs' insurance expert (Larry Goanos), lending expert (Brian Kelley) and digital signature expert (Kenneth Moyle) testified that the term "original" has no specialized trade meaning in the insurance, lending and digital signature industries, respectively. (Dkt. No. 208, Defs.' SMF ¶ 4, 13-15; Exhibit 2, Larry Goanos Dep., at 71:16-74:03; Dkt. No. 199-15, Brian Kelley Dep., at 88:21-88:25; Exhibit 1, Kenneth Moyle Dep., at 131:09-131:23).

4

dictionaries define "original" as the first rendering of a document,[15] the first rendering of a hand-signed document is the one physically signed with a pen, and SVB never obtained that version.[16]

Even Plaintiffs' own expert agrees that the scanned copy of a hand-signed agreement is not an original. Faced with the dictionary definition of "original," Plaintiffs' lending expert conceded the first rendering, and therefore the original, of a hand-signed document is the wet-ink version:

> Q.    Do you see the definition of "original" in the second column to the right?
> A.    Okay.
> Q.    And it says, and I quote, "the source or cause from which something arises; that from which a copy, reproduction, or translation is made." Do you see that?
> A.    I do.
>                          . . . .
> Q.    When you -- when you -- when you take a loan agreement and you sign it with a pen --
> A.    Sure.
> Q.    -- can we agree that the wet-ink version is -- is the first rendering of the document?
> A.    I would think so, yes. [17]

While the wet-ink original may thereafter be scanned and sent via email, SVB's expert agreed that the scanned version is "a copy o[f] something that reflected the original document . . . ."[18]

Courts agree that a scanned version of a hand-signed document is not an "original" because it is not the first rendering of the document. *See, e.g.*, *In re Mullins*, 125 B.R. 808, 810 (Bankr. E.D. Cal. 1990) (facsimile of a hand-signed document was not an "original" because the electronically transmitted version was a duplicate, not the first rendering). Courts interpreting Insuring Clause 5 agree. The Ninth Circuit upheld the "original" requirement in *Bank of Bozeman*, 404 F. App'x 117 and denied coverage because the insured never obtained the wet-ink original. Because the parties admit California law applies, *Bank of Bozeman* is dispositive of the issue.

Applying *Bozeman*, *Fremont* denied coverage on the same basis. There, the insured

---

[15] SVB Plaintiffs admit to the dictionary definition of original and agree that it means "that from which a copy, reproduction, or translation is made" or "a work composed firsthand." (SVB Pls.' Mem. Supp. Mot. Summ. J. 18, Dkt. No. 204, pg. 18).

[16] Dkt. No. 208, Defs.' SMF ¶¶ 22, 23; Dkt. 199-5, Josh Cashwell 11-8-24 Dep., pg. 88:12-88:25

[17] Dkt. No. 208, Defs.' SMF ¶ 33; Dkt. No. 199-15, Kelley Dep., at 204:17-204:24, 205:16-205:21.

[18] Dkt. No. 208, Defs.' SMF ¶ 34; Dkt. No. 199-15, Kelley Dep., at 85:03-85:09.

accepted a faxed version of an allegedly forged document, instead of requiring receipt of the wet-ink original. While the insured argued that there was no material distinction between a copy and the original, the district court recognized that it could not rewrite or ignore the bond. It therefore granted summary judgment for the insurer because "the plain language of Insuring Clause 5 requires [insured] to have relied on original documents that are actually in its physical possession" and "a facsimile copy does not constitute an 'original' document." 2013 WL 12124105, at *13.

As in *Fremont* and *Bozeman*, the Agreements here bore hand-written signatures.[19] As SVB Plaintiffs' expert concedes, the first rendering and therefore "original" thereof is the wet-ink version created when the Agreements were physically signed.[20] SVB could have required Smerling to present the original (as occurs when a consumer purchases a $250,000 home),[21] but chose to not do so even though Smerling sought to borrow ***$150,000.000*** and SVB knew the Bond provided coverage only if it obtained the original. SVB's choice precludes coverage.

      **2.**     ***SVB' Counterarguments Are Impermissible Attempts to Contravene the Bond, the Undisputed Facts, and California Law.***

Because admissions by their witnesses and expert debunk their claim, SVB Plaintiffs assert arguments disconnected from the undisputed facts, controlling authority, and the Bond. They

- focus on statutory regulation of electronic signatures, ***even though*** those statutes do not define "original," do not apply to the Bond, and do not apply to hand-signed documents;

- cite a single distinguishable case, ***even though*** it did not apply California law, represents a minority view, and arose in a distinguishable context;

- characterize electronic communications as common and reliable, ***even though*** that post-loss view does not alter the Bond and the contractual obligation to obtain the "original";

- discuss electronic execution, ***even though*** the Agreements were hand-signed;

---

[19] Defs.' SMF Resp., ‖ 1, 16, Exh. 1, Moyle Dep., at 54:21-55:04; Dkt. No. 199-15, Kelley Dep., at 71:16-71:10; 206:16-206:19.

[20] Dkt. No. 208, Defs.' SMF ¶ 33; Dkt. No. 199-15, Kelley Dep., at 204:17-204:24, 205:16-205:21.

[21] Defs.' SMF Resp., ‖ 57; Dkt. 199-5, 11-8-24 Cashwell Dep., pg. 54:17-55:05, 171:03-171:06; Dkt 199-15, Kelley Dep., pg. 79:12-81:22.

- suggest that SVB commonly used electronic communications, *even though* SVB had the option to secure a wet-ink original and simply chose not to comply with the Bond; and

- discuss unrelated insurance policies, *even though* California law holds that the terms of other policies are inadmissible and irrelevant.

SVB Plaintiffs ignore binding precedent and the dictionary definition of "original" because application of controlling authority and dictionary definitions rebuts their claim.

### i. Statutory Provisions Do Not Alter the Terms of the Bond.

SVB cite the Uniform Electronic Signatures Act ("UETA") and Electronic Signatures Act ("E-Sign") in hopes of convincing the Court to ignore the common definition of "original." California law forbids the Court from doing so. An insurance policy must "… be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Delgado v. Heritage Life Ins. Co.*, 157 Cal. App. 3d 262, 271 (1984). A court may not therefore apply definitions from industry sources because doing so contravenes how a layperson would interpret the words. *Am. Star Ins. Co. v. Ins. Co. of the West*, 232 Cal. App. 3d 1320, 1330–1331 (1991).

However, even if UETA/E-Sign were relevant, UETA/E-Sign does not prohibit private parties from requiring physical execution of documents and production of the original wet-ink document. To that end, SVB Plaintiffs' expert agreed that despite the advent of electronic signatures and statutes authorizing them, a contract can require original wet-ink documents:

Q. Regardless of what UETA legally says you agree with me that as a practical matter the parties to a contract can still require a wet ink physical hand-signed agreement?
. . . .
A. Yes.
Q. And regardless of what UETA says parties can require the wet-ink written, physical hand-signed agreement be maintained; correct?
. . . .
A. Yes.[22]

---

[22] Dkt. No. 208, Defs.' SMF ¶ 54-56; Exhibit 1, Moyle Dep., at 127:12-128:05 (objections omitted).

7

He so agreed because UETA expressly states that it "does not require a record or signature to be created, generated, sent, communicated, received, stored, or otherwise processed or used by electronic means or in electronic form" and only applies "to transactions between parties each of which has agreed to conduct transactions by electronic means." Cal. Civ. Code §§ 1633.5.

Because the Bond does not incorporate or adopt UETA/E-Sign, they have no bearing on the meaning and interpretation of the Bond. However, even if they were relevant, UETA/E-Sign could never salvage SVB Plaintiffs' claim even if it applied here, for two reasons. First, neither E-Sign nor UETA define the word "original"—the dispositive term in this case. Cal. Civ. Code §§ 1633.1-1633.17. Therefore, the mere fact that they provide a structure for approving electronic contracts has no bearing on whether a scanned copy of a hand-signed agreement is an "original." Second, UETA applies only when there is an "electronic signature." The term "electronic signature" only applies to "an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record." Cal. Civ. Code §§ 1633.2(h). Because the Agreements were hand-signed and do not involve an "electronic signature",[23] UETA does not apply.

ii. **A Distinguishable Case from Utah Cannot Overcome California Law.**

SVB Plaintiffs do not cite a single California case in support of their position, and this is because every California court to consider the issue has agreed that the term "original" only encompasses the first rendering of a document and coverage does not exist where an insured extends credit on a copy. *See, e.g.*, *Bank of Bozeman*, 404 F. App'x at 118-19; *Fremont Reorganizing*, 2013 WL 12124105, at \*13; *Valley Cmty. Bank*, 854 F. Supp. 2d at 706-07. SVB Plaintiffs ignore binding Ninth Circuit precedent and ask this Court to follow a distinguishable

---

[23] Dkt. No. 208, Defs.' SMF ¶ 26; Dkt. No. 199-15, Kelley Dep., at 70:16-71:10 (objections omitted).

8

case from Utah: *Transportation Alliance Bank, Inc. v. BancInsure, Inc.*, No. 1:11CV148, 2014 WL 684691 (D. Utah 2014).[24] But, as explained in Insurers' response to FDIC's motion for summary judgment (Dkt. No. 220), *Transportation* applied Utah law, while this case is governed by California law. *Bank of Bozeman* represents the controlling interpretation of California law and that governs this case.

In addition, there are three independent reasons (apart from the fact this unpublished case contradicts binding precedent) not to follow *Transportation*. First, *Transportation* involved a factually distinct transaction in that the document at issue therein was created electronically and existed only electronically. In this case, the Agreements were hand-signed with a pen.[25] Second, *Transportation* teeters on a false premise that "electronic copies are widely considered originals." 2014 WL 684691, at *6. That is untrue under California law, as California law recognizes that the dictionary definition of "original" encompasses the wet-ink version and that any other version is not an "original." *See In re Patacsil*, No. 20-23457, 2023 WL 5507229, at *1-4 (E.D. Cal. Feb. 28, 2023); *In re Larsen*, No. 2:16-18600, 2019 WL 4621256, at *12 (C.D. Cal. Sept. 23, 2019). Third, *Transportation* predicated its analysis on the alleged commonality of electronic communications, but California law does not require insurers to insure every risk and does not permit the court to re-write a policy based upon its perception of reasonable business practices. For the same reason no other court has done so, this Court should following binding precedent set in *Bozeman* and refuse to follow *Transportation*.

      iii.    **SVB Plaintiffs' Post-Loss View of Materiality and Common Banking Practices Cannot Alter the Bond.**

---

[24] SVB Plaintiffs also cite *Citizens Banking Corp. v. Gulf Ins. Co.*, No. 03-CV-74044, 2005 WL 1983248 (E.D. Mich. Aug. 10, 2005), but that case did not involve Insuring Clause E and instead addressed the undefined phrase "original finance documentation." Because it did not address the operative insuring clause, it is immaterial.

[25] Defs.' SMF Resp., ¶ 1, 16, Exh. 1, Moyle Dep., at 54:21-55:04; Dkt. No. 199-15, Kelley Dep., at 71:16-71:10; 206:16-206:19.

In further support of its position regarding electronic documents, SVB Plaintiffs encourage the Court to ignore the terms of the Bond because electronically exchanged documents are common and reliable. To that end, they purport to describe how Federal uses electronic communications in its claim process and actions to underwrite loans. But the use of electronic communications in other contexts or by Federal is immaterial to whether the Bond covers loans predicated upon copies.

The time to negotiate the terms of the Bond has long passed. Before SVB purchased the Bond, it was free to negotiate revisions to Insuring Clause 5, but it did not do so and purchased coverage limited to making loans based upon "original" documents. California law does not permit a court to rewrite that agreement, even if the Court views electronically exchanged documents as common, reasonable, and reliable. *Certain Underwriters at Lloyd's of London v. Super. Ct.*, 16 P.3d 94, 108 (Cal. 2001). SVB (and, by extension, SVB Plaintiffs) is bound by its agreement with Insurers and cannot circumvent its agreement based upon the alleged commonality, reliability, or use of electronically executed documents.

Consistent with traditional loan practices, SVB's executives acknowledged that they could have conditioned the loan on receipt of the wet-ink original.[26] While SVB Plaintiffs now demean the commonality and necessity of wet-ink originals, authoritative standards[27] and SVB Plaintiffs' own expert, electronic documents are not common in commercial lending. SVB Plaintiffs' expert confirmed that commercial lenders still require the wet-ink original:

> Q    Okay. And -- and so the concept of hand-signing documents with a pen even today, meaning 2025, still exists in the banking industry, correct?
> A    Right.
>                    . . . .

---

[26] Defs.' SMF Resp., ⁋ 57; Dkt. 199-5, 11-8-24 Cashwell Dep., pg. 54:17-55:05, 171:03-171:06; Dkt 199-15, Kelley Dep., pg. 79:12-81:22.

[27] Defs.' SMF Resp., ⁋ 18, 20-21; Exhibit 3, Electronic Signature and Record Association, Standard No. 1; Exhibit 1, Moyle Dep., at 25:16-26:20, 74:14-78:22.

Q But -- and in particular, even today in 2025, it still exists in the banking industry that banks will not only require that documents be signed with a pen but that the first rendering, meaning the -- the wet-ink version, be provided to them, correct?

A Yeah. Again -- again, where bank documents are concerned, that would be my experience, yeah.[28]

Banks do so because without the wet-ink original, one cannot as easily verify the authenticity of the signatures.[29] That SVB chose to do otherwise does not override the requirements for coverage.

### iv. The Reference to Electronic Execution Is Immaterial.

SVB Plaintiffs repeatedly suggest that an electronically executed document qualifies as an original. This entire discussion is immaterial and SVB Plaintiffs' argument fails because the Agreements were not electronically executed.[30] Nonetheless, SVB Plaintiffs suggest that the Court should consider the Agreements to be "original" because they were incorporated into the Loan Agreement and the Loan Agreement is an "original" because it was electronically executed by DocuSign. This argument fails because the Agreements were not incorporated into the Loan Agreement and SVB did not receive the original Loan Agreement.

First, SVB Plaintiffs wrongly suggest that the Agreements were incorporated by reference into the Loan Agreement. That did not occur. While the Loan Agreement references the Agreements, a reference is not incorporation by reference. *R.E.L. Enters. v. Oldcastle, Inc.*, 226 Cal. Rptr. 3d 677, 683-84 (Cal. Ct. App. 2017). Incorporation by reference requires a clear agreement to integrate the full terms of one agreement into another. *Shaw v. Regents of Univ. of Cal.*, 67 Cal. Rptr. 2d 850, 856 (Cal. Ct. App. 1997). No such provision exists in the Loan

---

[28] Defs.' SMF Resp., ⸿ 22; Dkt. No. 199-15, Kelley Dep., at 78:01-78:21. In fact, Plaintiffs' expert could not identify a single commercial loan closed using electronic signatures. Defs.' SMF Resp., ⸿ 63; Dkt. No. 199-15, Kelley Dep., at 97:12-97:15.

[29] Defs.' SMF Resp., ⸿ 25; Exhibit 4, Dianne Flores Dep., at 41:05-42:02.

[30] Defs.' SMF Resp., ⸿ 1, 16, Exh. 1, Moyle Dep., at 54:21-55:04; Dkt. No. 199-15, Kelley Dep., at 71:16-71:10; 206:16-206:19. Emailing a copy of a hand-signed document does not convert it into an electronically executed document. *Togiak Mgmt. Servs., LLC v. United States*, 169 Fed. Cl. 83, 90-91 (Ct. Cl. 2023).

Agreement. The Loan Agreement never once uses the phrase "incorporated by reference." Accordingly, the factual predicate for SVB Plaintiffs' argument fails.

Second, SVB Plaintiffs' arguments fail because they wrongly assume that an electronic copy of a document executed via DocuSign is an "original." SVB Plaintiffs again cite no authority in support of their position. They cannot do so because, as Plaintiffs' digital signature expert confirmed, the concept of originality does not exist in the digital signature industry.[31] As a result, courts recognize that an electronically executed document is not an original. *In re Patacsil*, 2023 WL 5507229, at *1-4; *In re Larsen*, 2019 WL 4621256, at *12; *In re Mayfield*, No. 16-22134, 2016 WL 3958982, at *2 (E.D. Cal. July 15, 2016); *In re Mullins*, 125 B.R. at 810.

*Mayfield* illustrates the point. In that case, the local rules required an attorney to obtain an original signature. But, rather than securing a hand-written signature, the attorney argued that a digital signature constituted an original. Rejecting that notion, the court recognized the distinction between an electronic signature and an original. The court did so despite the common usage of electronic communications and electronic signatures, stating:

> The court finds that a DocuSign affixation is a software-generated electronic signature, as distinguished in the local rule from an originally signed document. Although DocuSign affixations and other software-generated electronic signatures may have a place in certain commercial and other transactions, they do not have a place as substitutes for wet signatures on a bankruptcy petition, schedules, statements, and other documents filed with the court, and they do not comply with this court's local rule.

2016 WL 3958982, at *3.

As SVB Plaintiffs' own expert acknowledges, the concept of "original" does not exist in the context of electronically executed documents because the electronic execution industry focuses solely on the integrity of the execution process, not whether the end product is an original.[32] While

---

[31] Defs.' SMF Resp., 58; Exhibit 1, Moyle Dep., at 175:18-175:10.
[32]  Defs.' SMF Resp., ⁋ 58; Exh. 1, Moyle Dep., 175:18-175:22.

12

that process may have a reasonable role in business, Insurers did not agree to insure lending predicated upon such practices. Electronically executed documents are not covered because there is no original of such documents and possession of an original is a mandatory element of coverage.

          v.      **SVB's Decision to Accept Scanned Copies Does Not Render Coverage Illusory or Invalidate Its Obligations under the Bond.**

SVB Plaintiffs attempt to distract by suggesting that the Bond as written contradict SVB's business practices (because it commonly accepts electronic communications). The time to negotiate the Bond lapsed long ago. Insurers owed no obligation to cover every risk associated with SVB's business and to conform the terms of the Bond to SVB's business. SVB was aware of its business practices at the time it purchased the Bond, and had an obligation to read the Bond and assess the proposed coverage. *See Hadland v. NN Investors Life Ins. Co.*, 30 Cal. Rptr. 2d 88, 93-94 (Cal. Ct. App. 1994). SVB then had the choice to either reject the Bond or negotiate new terms. Because SVB chose to buy the Bond as written, its alleged business practices provide no grounds for invalidating the terms of the Bond or SVB's obligation to obtain the wet-ink original.

          vi.     **Inadmissible References to Other Policies Neither Creates an Ambiguity Nor Expands Coverage.**

SVB Plaintiffs attempt to alter the plain and ordinary definition of "original" on the theory that other bond forms, but not all or even a majority, define the term "original" but that Federal did not do so. In essence, SVB Plaintiffs argue that Federal's decision not to adopt a definition means that the court can consider the drafting history of other policies when defining the word "original." But they cite no authority for this proposition because their argument contravenes two fundamental principles of California law.

First, SVB Plaintiffs never argue that the term "original" is ambiguous, meaning susceptible to more than one reasonable interpretation, and they cannot do so because the Ninth Circuit has held that the term is unambiguous. *Bank of Bozeman*, 404 F. App'x at 119. Because

13

there is no ambiguity, California law prohibits the consideration of extrinsic evidence—including drafting history—when interpreting the term "original." *ACL Tech. v. Northbrook Prop. & Cas. Ins. Co.*, 22 Cal. Rptr. 2d 206, 216-17 (Cal. Ct. App. 1993).

*ACL* conclusively prohibits SVB Plaintiffs' repetitive citation to and reliance upon drafting history. As here, the insured attempted to circumvent unambiguous policy language by referencing drafting history. Rejecting that argument, the California Appellate Court held that drafting history could not be considered: "[R]eliance on extrinsic drafting history contradicts the basic rule that words in insurance policies should be interpreted as laypersons would interpret them." *Id.* at 1798. The court concluded that "[t]here is no legal authority for us of drafting history." *Id.* Accordingly, the court held that the plain meaning of the policy controlled, regardless of any alleged drafting history. *Id.* The same is true here. Because the word "original" has an ordinary meaning, SVB Plaintiffs cannot use extrinsic evidence to circumvent that meaning.

Second, SVB Plaintiffs' attempt to create the illusion that the failure to implement a contractual definition implies an ambiguity or alleged intent to broaden coverage. It cites no authority permitting the Court to make such a leap and cannot do so because the California Court of Appeals has expressly rejected the notion that distinctions between various bond forms is admissible evidence of an ambiguity that can be used to expand coverage. *McKee v. State Farm Fire & Cas. Co.*, 193 Cal. Rptr. 745, 748 (Cal. Ct. App. 1983).

The decision in McKee rejected an analogous attempt to expand coverage based upon other policy forms. As here, the insured argued that a subsequent revision of the policy language demonstrated an ambiguity in an insurance policy. The defendant attempted to argue that "the alteration to the exclusion subsequent to plaintiff's claim [was] irrelevant to the issue of application of the exclusion as it then read to plaintiff's loss." *Id*. at 777. *McKee* held evidence that the insurer

14

subsequently revised an exclusion was not admissible: "evidence of subsequent revisions of an exclusionary clause in an insurance policy should be inadmissible because it lacks *relevance*, i.e., has no tendency to prove a material fact—is not probative on the issue of liability." *Id*. at 777–78 (emphasis in original). Accordingly, the court found that there was no error in the trial court awarding the insurer summary judgment due to the plaintiff's claim falling within the exclusion; the subsequent revision of the clause was inadmissible because it was entirely irrelevant. *Id.*

Other courts outside California have reached the same conclusion. *Detroit Ent., LLC v. Am. Guarantee & Liab. Ins. Co.*, 660 F. Supp. 3d 631, 644 (E.D. Mich. 2023) (holding that "[t]he fact that [the insurer] amended the [endorsement] to make the parties' intent clearer does not mean the original language was ambiguous"); *Fiorella v. Travelers Prop. Cas. Ins. Co.,* 36 Kan. App. 2d 597, 604 (2006) (holding that "[i]f the policy was not ambiguous on its face at the time of the accident, a subsequent policy change does not retroactively create ambiguity"); *Babbitt v. Blauert Const., Inc.*, No. 06-0766, 2008 WL 2231507, at *3 (Ariz. Ct. App. May 27, 2008) (evidence indicating a change in an insurance company's internal policy was found to be a subsequent remedial measure and was not admissible); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290 (Del. 2001) ("The fact that [the insurer] chose to make a clear policy provision more clear as a remedial measure to this litigation may not be used as evidence of an admission of either ambiguity or acceptance of Appellants' interpretation of the policy").

For decades, courts have uniformly agreed that the undefined term "original" unambiguously meant the first rendering of a document and denied coverage where, as here, the insured extended credit upon a copy. That other carriers incorporated the dictionary definition of "original" into their form does not alter the ordinary meaning of "original" or otherwise expand coverage under the Bond. That is why *McKee* rejected SVB Plaintiffs' reasoning and held that an

15

insured may not use other policy forms to imply an ambiguity or alter the coverage it purchased.

Finally, SVB Plaintiffs' incomplete narrative wrongly presupposes some distinction between the dictionary definition of "original," which governs any undefined term in the Bond, and the contractual definition of "original" found in other bond forms. No such distinction exists. The contractual definition of "original" incorporated into other bond forms derives from the dictionary definition of "original." To leave no doubt, the parties deposed a corporate representative of the Surety & Fidelity Association of America (SFAA), which promulgates the standard form Financial Institution Bond, to understand why a definition of "original" was added to later bond forms. That testimony confirmed that when the SFAA added a definition of "original," it simply lifted the dictionary definition of "original" from Black's Law Dictionary.[33]

Contemporaneous communications reflect that the adoption of a contractual definition was not a change in coverage or otherwise a suggestion that the word "original" lacked a clear and unambiguous meaning.[34] For more than a generation, the SFAA and its co-drafter (the American Bankers Association or ABA) agreed that even without a definition, Insuring Clause 5 only applied if the bank possessed the original. Federal agreed, and its internal presentations confirmed that reality.[35] The SFAA and ABA incorporated a definition solely to prevent any argument to the contrary. To this end, bonds with a contractual definition and bonds without a definition are identical in scope because the contractual definition incorporated mirrors the dictionary definition.

## B.    FAILURE TO OBTAIN ACTUAL PHYSICAL POSSESSION PRECLUDES PROOF OF RELIANCE.

SVB Plaintiffs cannot meet the reliance requirement of the Bond because SVB never had actual physical possession of the Agreements and never reviewed the Agreements. The Bond

---

[33] Defs.' SMF Resp., ⁋ 26-28; Exhibit 5, Julie Alleyne Dep., at 143:21-144:14.
[34] Defs.' SMF Resp., ⁋ 28;  Exhibit 5, Julie Alleyne Dep., at 147:13-148:13; Digest of Bank Insurance, pg. 82-3.
[35] Defs.' SMF Resp., ⁋ 49, Exhibit 9.

leaves no doubt as to what is required for reliance: an insured must have "actual physical possession" of a document in order to rely upon that document. "Actual physical possession . . . is a condition precedent to the ASSURED having relied on such items."[36] It is not enough for SVB to claim that SVB required Smerling to provide the Agreements. It must prove that it had "actual physical possession" of those Agreements. *Fremont Reorganizing*, 2013 WL 12124105, at \*13.

The Bond does not define the terms "physical" or "possession" and therefore the Court must apply the ordinary meaning of those terms. The term "physical" means "something that can be touched" and the term "possession" means "the act or condition of having or taking into control."[37] In combination, they require that the insured possess a version that can be touched, i.e., the physical version. *Fremont Reorganizing Corp.*, 2013 WL 12124105, at \*13; *see also Republic Nat'l Bank v. Fid. & Deposit Co.*, 894 F.2d 1255, 1262 (11th Cir. 1990); *Hamilton Bank v. Ins. Co. of N. Am.*, 557 A.2d 747, 750-51 (Pa. Super. Ct. 1989). Applying these definitions, SVB never obtained actual physical possession of the Agreements because it did not receive the tangible version and instead accepted a scanned copy.[38]

*Fremont Reorganizing* is on point. There, the insured claimed that it relied upon allegedly forged documents when extending credit, even though it did not obtain the paper versions of the loan documents. The district court reasoned that the insured could not demonstrate reliance unless it had physical possession of the documents, and it applied the common meaning of the term "physical possession" and held that this term contemplated possession of paper copies and not the receipt of electronic copies: "The undisputed facts show that [the insured] did not receive actual physical possession of the original loan documents, but authorized the release of loan funds based

---

[36] Defs.' SMF ℙ 4; Dkt. No. 199-3, Insuring Clause 5, pp. 8-9.
[37] *Possession*, https://www.merriam-webster.com/dictionary/possession (last visited June 10, 2026).
[38] Defs.' SMF ℙℙ 22-23, Dkt. No. 208, Dkt. No. 199-3; Dkt. No. 199-5, Josh Cashwell 11-8-24 Dep., at 88:12-88:25; Defs.' SMF ℙℙ 25, 26; Dkt. No. 199-15, Kelley Dep., at 70:16-71:10 (objections omitted).

on receipt of a faxed copy of the loan documents." 2013 WL 12124105 at *13.

As in *Fremont Reorganizing*, SVB Plaintiffs' witnesses and experts admit that SVB did not obtain "physical possession" of the Agreements, but instead accepted a scanned copy. SVB could have created and papered these agreements, but it never did so.[39] As such, SVB failed to comply with the plain terms of the Bond and, thus, it cannot demonstrate that it relied upon the Agreements, and SVB Plaintiffs' claim fails.

However, even if SVB Plaintiffs' argument had merit, then SVB Plaintiffs bore the obligation to prove reliance. As explained in Insurers' response to FDIC's motion for summary judgment, which is incorporated by reference, SVB cannot do so because its employees never so much as glanced at the Agreements until after they funded the loan.[40] SVB bank cannot rely upon a document it never reviewed. *Rep. Nat'l Bank v. Fid. & Dep. Co.*, 894 F.2d 1255, 1263 (11th Cir. 1990); *FDIC v. Cincinnati*, 981 F. Supp. 2d 1324, 1338 (N.D. Ga. 2013). Thus, regardless of whether SVB had actual physical possession, it still cannot prove reliance.

## C.     THE AGREEMENTS ARE NOT QUALIFYING DOCUMENTS

As explained in Insurers' response to FDIC's motion for summary judgment (Dkt. No. 220), Insuring Clause 5 does not cover all loss involving all documents purportedly bearing a **Forgery**.[41] Instead, the parties agreed that Insuring Clause 5 would only apply if select categories of documents bore a **Forgery**.[42] Thus, SVB Plaintiffs must prove that the Agreements fall within one of those categories. They cannot do so. Applying the plain terms of the Agreements to the

---

[39] Plaintiffs' expert explained that a recipient of electronic data can convert the electronic record into a tangible document. That process is referred to as the "papering out" of the record. (Defs.' SMF Resp., ¶ 30; Exhibit 1, Moyle Dep., at 164:18-165:05). That process yields a physical record which can then be used to comply with legal obligations that require physical records (such as recording deeds). (*Id.*)

[40] Defs.' SMF Resp., ¶ 32-38; Dkt. No. 199-5, Cashwell Dep., at 42:7-13, 42:15-17; Dkt. No. 199-7, Erin Caulfield Dep., at 16:2-10; Dkt. No. 199-8, Kristy Vlahos Dep., at 23:17-24; Dkt. No. 199-9, Lauren Gates Dep., at 18:9-13; 18:22-19:1; Dkt. No. 199-10, Andy Enroth Dep., at 18:15-18.

[41] Dkt. No. 208, Defs.' SMF ¶ 4; Defs.' Ex. 1, Dkt. No. 199-3, Insuring Clause 5, pp. 8-9.

[42] Dkt. No. 208, Defs.' SMF ¶ 4; Defs.' Ex. 1, Dkt. No. 199-3, Insuring Clause 5, pp. 8-9.

contractual definitions demonstrates that the Agreements are not a (1) **Guarantee,** because they do not obligate anyone to pay a debt to SVB, or (2) a **Security Agreement**, because they do not create an interest in partnership assets. SVB Plaintiffs' arguments to the contrary mischaracterize the Agreements and invent terms that do not exist. Misstating and mischaracterizing the Agreements does not transform them into a **Guarantee** or a **Security Agreement**.

### 1. *The Agreements Are Not Security Agreements.*

The Bond defines **Security Agreement** as any "agreement which creates an interest in personal property or fixtures and which secures payment or performance of an obligation."[43] Put simply, at its core, a security agreement requires an express grant of an interest in an identified asset. It requires two basic elements: (1) a grant of an interest, and (2) a description of the property. To that end, courts have refused to find a security agreement where the allegedly forged document solely described the property but did not itself grant the insured an interest in that property. *Valley Cmty. Bank*, 854 F. Supp. 2d at 699 (the account statements "do not create a security interest or secure payment or performance but simply identify the assets that are held in each account"). *KW Bancshares v. Syndicates of Underwriters at Lloyd's*, 965 F. Supp. 1047, 1054 (W.D. Tenn. 1997) (letter promising a bonus was not a "security agreement" because it did not create an interest in the payment; the bank had interest in the payment because the loan agreement granted that right). In contrast, courts find a security agreement only if it grants the insured a right to a specific asset. *Banc of Cal. Nat'l Ass'n v. Fed. Ins. Co.*, No. 21-56179, 2022 WL 17583056, at \*2 (9th Cir. Dec. 12, 2022) ("control agreement" constituted a "Security Agreement" because it created a possessory interest in the bank account); *FDIC v. RLI Ins. Co.*, 784 F.3d 1104, 1110 (7th Cir. 2015) (leases were "Security Agreements" because they "permit the lessor in case of default to repossess the

---

[43] Dkt. No. 208, Defs.' SMF ¶ 7; Defs.' MSJ Exhibit 1, Dkt. No. 199-3, Conditions and Limitations § 1.x., p. 18.

19

equipment and to require payment of arrears, costs of equipment removal and reasonable attorneys' fees . . . .").

Under *Valley Community*, *KW Bancshares*, and *Banc of California*, the test to identify a **Security Agreement** is clear: does the document itself create a right to an asset? That test is not met here. The Agreements may identify property, such as capital commitments, but they did not grant SVB a right or interest in that property. SVB Plaintiffs cite Paragraph 4.5 of the Limited Partnership Agreement, but ignore its contents. That paragraph simply states that the Partnership *may* take on debt, and if it does, it *may* secure such debt by assigning collateral to creditors.[44] However, it makes no actual assignment of collateral to any specific creditor and does not grant any specific creditor any right to partnership assets.

SVB Plaintiffs fail to distinguish between two very different things: a path to repayment and an actual security interest in specific property. Neither the existence of a potential collateral (like capital commitments) nor a general partner's authority to pledge collateral create an interest in favor of SVB in that collateral. Therefore, the Agreements may create obligations for the limited partners to the partnership and may grant the general partner certain rights, but they did not grant SVB an interest in anything or otherwise create an interest in favor of SVB in partnership assets. Without the Loan Agreement—a document that was decidedly, undisputedly, *not* forged—the Agreements do not create a security interest in anything at all. Accordingly, the Agreements are not **Security Agreements**, and thus, any **Forgery** thereon does not trigger coverage.

### 2. *The Agreements Are Not Guarantees*

SVB Plaintiffs wrongly argue that the Agreements are **Guarantees**. The Bond defines **Guarantee** as "a written undertaking obligating the signer to pay the debt of another to the

---

[44] Dkt. No. 208, Defs.' SMF ¶ 31; Dkt. No. 199-11, Limited Partnership Agreement.

ASSURED or its assignee . . . , if the debt is not paid in accordance with its terms."[45] Thus, SVB Plaintiffs bear the burden of proving that the Agreements obligated the limited partners to pay the debt of another to SVB. *See BP W. Coast Prods., LLC v. Crossroad Petroleum, Inc.*, No. 12-CV-665, 2018 WL 264120, at \*6 (S.D. Cal. Jan. 2, 2018) (noting "[a] guarantor makes a direct promise to perform the principal's obligation in the event the principal fails to perform"); *see also Jefferson Bank v. Progressive Cas. Ins. Co.*, Civ. A. No. 90-584, 1990 WL 180585, at \*4 (E.D. Pa. Nov. 19, 1990) (explaining that "[a] title insurance policy is not a promise to pay a debt if the debt is not paid, and therefore it is not a guarantee"), *rev'd on other grounds*, 965 F.2d 1274 (3d Cir. 1992).

The Agreements contain no such provision and do not obligate anyone to pay the debts of the JES Fund. SVB Plaintiffs claim, without valid citation, that the Agreements obligated the limited partners to remit capital commitments in payment of loans. A review of the Agreements demonstrates that no such provision exists. While Plaintiffs again cite Paragraph 4.5, that paragraph contains no promise by the alleged limited partners to pay any debt to SVB. The only requirement is that each limited partner will fund its own pre-existing capital commitment to the partnership if called. That is an equity funding obligation, not a debt repayment obligation. Because they do not state that the limited partners will step in if JES defaults, the Agreements are not **Guarantees** and do not trigger coverage under Insuring Clause 5.

### 3. *The Loan Agreement Is Irrelevant Because It Was Not Forged.*

Because the Agreements are not **Security Agreements** or **Guarantees**, SVB attempts to manufacture coverage by arguing that the Loan Agreement constitutes a document covered under Insuring Clause 5. But, the Loan Agreement was not forged (it was signed by Smerling himself).[46] It is, therefore, irrelevant and cannot support a covered loss. *First Nat'l Bank of S.C. of Columbia*

---

[45]Dkt. No. 208, Defs.' SMF ¶ 5; Defs.' MSJ Exhibit 1, Dkt. No. 199-3, Definition 1.o., p. 17.
[46] Defs.' SMF Resp., ◰ 59;  Dkt. 202-15, Dkt. 202-19, pg. 9-10, 14.

*v. Glens Falls Ins. Co.*, 304 F.2d 866, 869 (4th Cir. 1962) (holding that an insured could not recover unless it proved a qualifying impairment on one of the documents identified in the insuring clause); *N.C. Nat'l Bank v. U.S. Cas. Co.*, 208 F. Supp. 452, 454 (W.D. N.C. 1962) (holding that insured could rely upon documents that did not bear a forgery to establish coverage).

Insuring Clause 5 states in plain terms that coverage exists only if SVB extended credit in reliance upon a document enumerated in subsections (a)(1) through (8) that "bears a **Forgery**."[47] The structure of Insuring Clause 5 makes it clear that an insured must prove a **Forgery** on one of the enumerated documents. It does so by expressly identifying the covered instruments and then stating that those instruments must "bear[] a **Forgery**."[48] Because the itemization of documents is followed by "which . . . bears a **Forgery**," the clause is clear that one of the enumerated documents must itself contain a **Forgery**. It is therefore irrelevant whether another document that does not bear a **Forgery** may constitute one of the documents enumerated in Insuring Clause 5.

Courts have rejected analogous claims where, as here, the insured cannot prove that the claimed forgery was contained on one of the documents enumerated in subsections (a)(1) through (8). *Wilbanks Secs. v. Nat'l Union Fire Ins.*, No. CIV-16-294-R, 2018 WL 738904, at *5-6 (W.D. Okla. 2018) (forged General Limited Partner Disclosure Form was not included in list of covered instruments); *Citizens Bank Holding, Inc. v. Atl. Specialty Ins. Co.*, No. 15-V-782, 2016 WL 8505590, at *3-5 (E.D. Wis. 2016) (allegedly forged document was not included in list of covered instruments); *First Union Corp. v. U.S. Fid. and Guar. Co.* 730 A.2d 278, 282, 283 (Md. Ct. App. 1999) (forged incumbency certificates were not included in list of covered instruments); *Empire State Bank v. St. Paul Fire & Marine Ins. Co.*, 441 N.W.2d 811, 813-14 (Minn. Ct. App. 1989) (certificates of participation were not included in list of covered instruments).

---

[47] Dkt. No. 208, Defs.' SMF ¶ 6; Defs.' MSJ Exhibit 1, Dkt. No. 199-3, Definition 1.o., p. 17.
[48] Dkt. No. 208, Defs.' SMF ¶ 6; Defs.' MSJ Exhibit 1, Dkt. No. 199-3, Definition 1.o., p. 17.

SVB Plaintiffs attempt to circumvent the plain terms of the Bond by arguing that the Agreements were incorporated by reference into the Loan Agreement or that they can bundle the Agreements with the Loan Agreement. Neither argument has merit.

First, the Agreements were not incorporated by reference into the Loan Agreement. While the Loan Agreement references the Agreements, a reference is not incorporation by reference. *R.E.L. Enters.*, 226 Cal. Rptr. 3d at 683-84; *Versaci v. Super. Ct.*, 26 Cal. Rptr. 3d 92, 97-98 (Cal. Ct. App. 2005). Incorporation by reference requires a clear agreement to integrate the full terms of one agreement into another. *Shaw*, 67 Cal. Rptr. 2d at 856. No such provision exists in the Loan Agreement. Indeed, the Loan Agreement never once uses the phrase "incorporated by reference." That reality debunks SVB Plaintiffs' argument.

Second, SVB Plaintiffs argue that other courts have considered bundling a collection of loan documents together and considered whether the collection constitutes a document within subsections (a)(1) through (8). This argument contravenes the foundational terms and structure of Insuring Clause 5, which identifies specific documents insurers have agreed to cover, but only if one of them bears a Forgery. If one could simply "bundle" loan documents together and then demand coverage if any one of them bears a **Forgery** even if the forged document was not enumerated in subsections (a)(1) through (8), it would be unnecessary to list any documents in Insuring Clause 5. The insuring clause would simply state that it covers any **Forgery** on any document bearing some tangential relationship to the insured's loss. But, it does not say that, and instead itemizes specific documents. Reading that itemization out of Insuring Clause 5 is an impermissible rewrite of the Bond.[49]

---

[49] SVB Plaintiffs argue that other bond forms include an anti-bundling provision and that the absence of such a provision somehow implies that the Bond permits bundling. As explained above, the terms of other bonds are irrelevant and inadmissible. The Bond must be enforced according to its terms and SVB cannot use extrinsic evidence to imply an ambiguity and/or expand coverage beyond the plain terms of the Bond.

23

SVB Plaintiffs argue that other courts have engaged in such impermissible judicial revisions, but they do not cite cases interpreting Insuring Clause 5. They cite *Community State Bank of Galva v. Hartford Insurance Co.*, 542 N.E.2d 1317 (Ill. App. 1989), and *Omnisource Corp. v. CNA/Transcontinental Ins. Co.*, 949 F. Supp. 681 (N.D. Ind. 1996), but those cases involved a different insuring agreement (Insuring Clause 4).[50] Because these cases did not involve the insuring clause at issue in this case, neither case supports SVB Plaintiffs' position.

However, even if either case is applicable here, they both represent a minority view that has been rejected by subsequent courts. Subsequent courts have refused to follow the two cases, holding that a court may not relieve an insured of the plain terms of the policy by bundling documents together as doing so represents an impermissible revision to the policy that expands coverage beyond the agreed terms. *Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys.*, 313 F.3d 295, 298-99 (5th Cir. 2002); *Parkans Int'l v. Zurich Ins. Co.*, 299 F.3d 514, 517 (5th Cir. 2002).

SVB purchased coverage in the event of a **Forgery** on specific documents. Rewriting the Bond to provide coverage even if those documents do not bear a **Forgery** simply because another document bears a **Forgery** overlooks the plain terms of Insuring Clause 5, renders the terms surplusage, and impermissibly grants coverage SVB did not purchase.

## II. IN THE ALTERNATIVE, THE REMAINING ELEMENTS OF SVB PLAINTIFFS' CLAIM IMPLICATE A GENUINE DISPUTE OF MATERIAL FACT.

SVB Plaintiffs acknowledge that Insuring Clause 5 applies only if SVB acted in good faith and can prove direct causation. From Insurers' perspective, these issues are moot because SVB Plaintiffs cannot prove the remaining elements of coverage, but if the Court disagrees, SVB

---

[50] Insuring Clause 4 involves distinct language and does not use the phrase "which bears a **Forgery**." Instead, it addresses instruments drawn on an insured. Courts debate whether instruments presented together are "drawn" upon an insured. That language and issue are not present here.

24

Plaintiffs are still not entitled to summary judgment due to the remaining issues of material fact.

**A.    SVB'S EXTENSION OF CREDIT DESPITE INDICIA OF FRAUD CREATES A GENUINE ISSUE OF MATERIAL FACT ON WHETHER IT ACTED IN GOOD FAITH.**

SVB Plaintiffs acknowledge that Insuring Clause 5 applies only if SVB extended credit in good faith. California law defines the term "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Cal. Com. Code § 1201. Applying this standard to financial institution bonds, courts have held that an insured does not act in good faith where, as here, it extends credit despite indicia of fraud. *Beach Cmty. Bank v. St. Paul Mercury Ins. Co.*, 635 F.3d 1190, 1200 (11th Cir. 2011); *F.D.I.C. v. Cincinnati Ins. Cos.*, 981 F. Supp. 2d 1324, 1336 (N.D. Ga. 2013); *Marsh Inv. v. Langford*, 721 F.2d 1011, 1014 (5th Cir. 1983). Here, SVB did not extend credit in good faith, as demonstrated by the fact that once SVB conducted post-closing due diligence, it immediately determined the Subscription Agreement had been forged.[51]

*Cincinnati* explained SVB Plaintiffs' burden of proof. As here, the FDIC argued that the bank acted in good faith as required under Insuring Clause 5 because the bank denied knowing of the fraud. Rejecting the notion that a denial of active knowledge of a fraud automatically establishes good faith, the district court held that gross negligence or knowing indifference to red flags can establish the absence of good faith. 981 F. Supp. 2d at 1336; *Marsh*, 721 F.2d at 1011 ("selective, calculated ignorance" of red flags constitutes bad faith); *French Am. Banking v. Flota Mercante Grancolombiana*, 609 F. Supp. 1352, 1358 (S.D.N.Y. 1985) ("selective, calculated ignorance" shows a lack of good faith reliance).

Here, SVB Plaintiffs claim that SVB acted in good faith based upon self-serving testimony from its employees, who denied knowledge of Smerling's fraud. Contrary to SVB Plaintiffs'

---

[51] Dkt. No. 208, Defs.' SMF ¶¶ 14-15, 17, Dkt. No. 208, Dkt. No. 199-6, Tom Davies Dep., at 43:8-19, Dkt No. 199-5, Josh Cashwell Dep., at 42:19-22, 42:24.

assertion, a denial of knowledge of a fraud does not automatically prove good faith. Rather, courts interpreting Insuring Clause 5 recognize that an insured cannot, in good faith, extend credit despite indicia of fraud and that doing so raises a genuine issue of material fact regarding good faith. That occurred here, since SVB extended credit despite (1) obvious forgeries; and (2) documented indicia of fraud. A reasonable juror viewing the facts in the light most favorable to Insurers could reasonably find that SVB did not act in good faith. Two examples illustrate the point.

First, SVB's relationship manager, Josh Cashwell, acknowledged that the Agreements obviously bore a forgery and that he could detect the forgery from a mere glance at the documents.[52] Cashwell confirmed that he could determine that the Subscription Agreement was signed in the same handwriting simply by looking at the signatures.[53] Therefore, unless SVB concedes that it did not review that agreement, in which case good faith is moot because SVB cannot prove reliance, it approved the loan despite an obvious forgery.[54] If the latter is the case, a reasonable juror could reasonably conclude that SVB did not act in good faith.

Second, SVB's acceptance of obviously forged documents is only one of many red flags. Insurers disclosed a lending expert to explain those red flags and the decision to extend credit knowing of those red flags. As documented in his report, SVB knew about and extended credit despite numerous red flags of fraud,[55] including the risk of fraud and the potential that the entire

---

[52] Dkt. No. 208, Defs.' SMF ¶ 13; Dkt No. 199-5, Josh Cashwell Dep., at 77:17-21.

[53] Defs.' SMF Resp., ⍭ 38; Dkt. No. 199-5, Josh Cashwell Dep., at 42:11-42:24. While one might normally assume that a bank would not do business with a known forger, SVB amended the loan after it concluded that the Subscription Agreements were forged. (Dkt. No. 208, Defs.' SMF ¶ 64; Defs.' MSJ Exhibit 8, Dkt. No. 199-10, Andrew Enroth Dep., at 99:07-100:17).

[54] FDIC argues that Insurers cannot rely upon hindsight to prove an absence of good faith, but this is not hindsight. Cashwell in fact identified the agreements as forged at the time of the loan. Because this case involves ignorance of an obvious forgery apparent from the face of the instrument, this case involves an absence of good faith.

[55] Defs.' SMF Resp., ⍭ 39; Exhibit 6, Charles Grice Expert Report, at 33-36.

JES enterprise "could be flat made up";[56] inconsistent financial records;[57] investors identified by generic names; and an inability to trace JES Funds and its alleged companies on the Internet.

SVB itself acknowledged that it approved the loan despite "multiple irregularities" and "clear inconsistencies…."[58] Due to these irregularities and inconsistencies, SVB's own personnel concluded that ". . . this situation just has strange, high risk written all over it."[59] This is not therefore a case of negligence, but instead a knowing decision to overlook indicia of fraud. A reasonable juror, viewing the facts in the light *most favorable to Insurers*, could reasonably conclude that SVB did not extend credit in good faith. *See, e.g.*, *First Nat'l Bank v. Cincinnati Ins. Co.*, No. 03-C-241, 2005 WL 2460719, at *5 (E.D. Wis. Oct. 5, 2005).

**B.** **SVB'S EXTENSION OF CREDIT AGAINST NON-EXISTENT COLLATERAL RAISES A GENUINE ISSUE OF MATERIAL FACT ON DIRECT CAUSATION.**

SVB extended credit to a non-existent entity, JES Fund, with non-existent investors, and non-existent assets.[60] These facts are fatal to SVB Plaintiffs' claims because "[t]he parties intended that the Bank would assume the risk of the collateral being worthless." *Liberty Nat'l Bank v. Aetna*, 568 F. Supp. 860, 866 (D.N.J. 1983). Insuring Agreement 5 codifies that risk-sharing agreement by requiring a direct nexus between the forgery and the loss. *Forcht Bank v. BancInsure*, 514 F. App'x 586, 591 (6th Cir. 2013). Where, as here, the forgery is immaterial and the insured would have sustained a loss absent a forgery, coverage does not exist. *See, e.g.*, *id.*; *Bank of Bozeman*,

---

[56] SVB's original loan analysis identified the risk of fraud and risk that this could be "flat made up." (Defs.' SMF Resp., ℙ 41; Dkt. No. 199-5, 11-8-24 Cashwell Dep., at 78:21-78:06; Exhibit 7, Email from Josh Cashwell to Mariya Baron, December 15, 2020, Termsheet Approval Request: JES Global Capital III, SVBC-S-0100-00003255-3257. Identifying a risk of fraud is not common. (Defs.' SMF Resp., ℙ 42; Dkt. No. 208, Defs.' SMF ¶ 13; Dkt. No. 199-8, Kristy Vlahos Dep., at 86:03-86:11).

[57] While JES Fund represented that it issued a capital call in December 2019, its bank statements show the alleged capital deposits occurred before JES issued a capital call. (Defs.' SMF Resp., ℙ 43; Dkt. No. 199-10, Andy Enroth Dep., at 70-74). Such inconsistency, Plaintiffs' witnesses testified, is not normal and should have prompted an investigation. (Defs.' SMF Resp., ℙ 46; Dkt. No. 199-10, Andy Enroth Dep., at 73:07-73:19).

[58] Defs.' SMF Resp., ℙ 46-47; Exhibit 8, SVBC-S-0100-00021614-16.

[59] Defs.' SMF Resp., ℙ 48; Dkt. No. 199-6, Tom Davies Dep., at 52:04-52:09.

[60] Defs.' SMF Resp., ℙ 44-48; Dkt. 202-55, SVB's Complaint against JES, ℙ 1.

27

404 F. App'x at 119; *Flagstar Bank v. Fed. Ins. Co.*, 260 F. App'x 820, 824 (6th Cir. 2008); *Alerus v. St. Paul*, 2012 Minn. App. Unpub. LEXIS 100, at *14-17 (Minn. App. 2012); *Reliance Ins. Co. v. Capital Bancshares, Inc./Capital Bank*, 685 F. Supp. 148, 151-52 (N.D. Tex. 1988).

The Ninth Circuit held that Insuring Clause 5 does not apply where an insured extends credit against non-existent collateral. In *Bank of Bozeman*, the insured extended credit to a non-existent company devoid of assets. Because the bank would have sustained a loss absent a forgery because the borrower lacked any assets, the Ninth Circuit held that the insured could not prove that the loss resulted directly from the forgery, as required under Insuring Clause 5:

> Finally, it was the worthlessness of the underlying collateral that directly caused the Participant Banks' losses, as several courts construing Agreement (E) have held in similar circumstances. . . . The Participant Banks would have sustained the same losses had the stock certificates and corporate guarantees been genuine because Transcontinental Airlines had virtually no assets or revenues. . . . Therefore, the losses did not "result[ ] directly from" forgery. BancInsure's Agreement (E) limits coverage to losses "resulting directly from" certain events it sets out.

404 F. App'x at 119. As here, the bank argued that it would not have extended credit absent the forgery. The Ninth Circuit rejected that theory because it reflects only but-for inducement and not the "direct loss" required by Insuring Agreement 5. The court held: "It doesn't matter that the Participant Banks may not have extended credit if they had realized the collateral was worthless," because accepting that argument would transform the bond into "a policy of credit insurance," which it is decidedly not. *Id.*; *see also Home Sav. & Loan Ass'n v. Fid. & Dep. Co. of Md.*, 742 F.2d 831, 833 (4th Cir. 1984) (upholding coverage because the insured possessed original).

*Forcht* further explained this point. Analyzing the same insuring agreement, the Sixth Circuit held that an immaterial forgery cannot trigger coverage because Insuring Agreement 5 "only protect[s] the bank from losses *directly* proceeding from good faith reliance upon securities that are forged." 514 F. App'x at 591 (emphasis in original). A *direct* nexus does not exist where "[t]he underlying collateral was essentially worthless from the day it was signed" because "[i]t is

from this point that [the] loss directly flows." *Id.* "Indeed, not even indirect loss appears attributable to the fact that the documents were fabricated, as, considering that if they had been genuine, [the insured] would have borne the same loss." *Id.*

Other courts have reached the same conclusion. *French Am. Banking Corp. v. Flota Mercante Grancolombiana*, 752 F. Supp. 83, 84 (S.D. N.Y. 1990) (losses were not covered because alleged forgeries represented transactions that had no actual value); *KW Bancshares, Inc. v. Syndicates of Underwriters at Lloyd's*, 965 F. Supp. 1047, 1054 (W.D. Tenn. 1997) (no coverage because allegedly forged document had no value, even if legitimately executed); *Liberty Nat'l Bank v. Aetna Life & Cas. Co.*, 568 F. Supp. 860, 863 (D.N.J. 1983) (the bond does not cover loss where insured could not recover absent forgeries because collateral did not exist).

Here, SVB Plaintiffs extended credit to a non-existent entity, the JES Fund, with non-existent investors, and non-existent assets. As a result, SVB cannot establish a covered loss because it cannot prove that SVB would not have sustained the same loss if only the signatures on the Agreements were authentic. On the contrary, the record proves that SVB Plaintiffs would have sustained the same loss regardless of the forgery because the JES Fund did not exist and did not have any assets. At a minimum, this issue raises a genuine issue of material of fact. *See Banc of Cal., Nat'l Ass'n v. Fed. Ins. Co.*, 686 F. Supp. 3d 928, 937-38 (C.D. Cal. 2023) ("Whether the forgery was the efficient proximate cause of Banc's loss is a question for the trier of fact.").

## CONCLUSION

Insurers respectfully request that this Court enter summary judgment in their favor, deny SVB Plaintiffs' motion, and award all other relief the Court deems appropriate.

Dated: June 11, 2026           Respectfully submitted,

                              /s/ *Scott L. Schmookler* _____

Scott L. Schmookler
sschmookler@grsm.com
Angela Sullivan
asullivan@grsm.com
**GORDON REES SCULLY MANSUKHANI**
One North Franklin, Suite 800
Chicago, IL 60606
312-980-6779
Fax 312-565-6511
*Attorneys for Federal Insurance Company*
-and-
Suzanne R. Walker
**GORDON REES SCULLY MANSUKHANI**
421 Fayetteville St., Suite 330
Raleigh, North Carolina 27601
swalker@grsm.com
984-242-1811
Fax 919-741-5840
N.C. State Bar No.: 37774
Local Civil Rule 83.1(d) Attorney for Federal
Insurance Company


/s/ *Michael Keeley*_____
Michael Keeley
Texas State Bar No. 11157800
 mkeeley@clarkhill.com
Holly Naehritz
Texas State Bar No. 24083700
hnaehritz@clarkhill.com
CLARK HILL PLC
901 Main Street, Suite 6000
Dallas, TX 75202-3794
(214) 651-4300
(214) 651-4330 Fax
*Attorneys for Berkley Regional Insurance Company*

-and-
Heather G. Connor
NC State Bar No. 27563
heather.connor@mgclaw.com
David M. Fothergill

30

NC State Bar No. 31528
david.fothergill@mgclaw.com
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, NC 28230
(704) 404-4664
(704) 643-2376 Fax
*Local Civil Rule 83.1(d) Counsel for Defendant*
*Berkley Regional Insurance Company*

31

**CERTIFICATION OF COMPLIANCE**

I, Scott Schmookler, hereby certify that the foregoing brief complies with L.R. 7.2. I further certify that the above document does not exceed 30 pages in length pursuant to L.R. 7.2(f)(2).

/s/ Scott L. Schmookler
Scott L. Schmookler

32

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record using the CM/ECF system.

/s/ Scott L. Schmookler
Scott L. Schmookler

33